UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA )
)
v. )   09 - CR - 272
)
MICHAEL T. CONAHAN and )
MARK A. CIAVARELLA, JR., )
)
Defendants. )

**FILED**
HARRISBURG, PA

SEP 9 - 2009

MARY E. D'ANDREA, CLERK
Por _____
Deputy Clerk

I N D I C T M E N T

Count 1

18 U.S.C. § 1962(c)
(Racketeering)

THE GRAND JURY CHARGES:

A. THE PARTIES

1.  At all times material to this Indictment, the defendants
MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. were judges of the
Court of Common Pleas for Luzerne County, Pennsylvania.  Between
approximately January of 2002 and January of 2007, MICHAEL T.
CONAHAN served as President Judge for Luzerne County.  Between
approximately 1996 and November of 2008, MARK A. CIAVARELLA, JR.
served as Judge of the Juvenile Court for Luzerne County.  In
approximately January of 2007, MARK A. CIAVARELLA, JR. was named
President Judge for Luzerne County.

2.  As judges of the Court of Common Pleas, the defendants
MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. owed a fiduciary
duty to the citizens of the Commonwealth of Pennsylvania and to
the Judiciary of the Commonwealth of Pennsylvania and were

required to file an annual statement of financial interests with
the Administrative Office of the Pennsylvania Courts, reporting
the source of any income, direct or indirect.  The Administrative
Office of the Pennsylvania Courts maintains a number of offices,
including an office in Philadelphia County, Eastern District of
Pennsylvania.

B.  <u>THE ENTERPRISE</u>

3.  At all times material to this Indictment, the Court of
Common Pleas for Luzerne County, part of the Judicial Branch of
the government of the Commonwealth of Pennsylvania, as
established by Article 5 of the Pennsylvania Constitution and by
the Pennsylvania Judicial Code, constituted an "enterprise" as
defined in Title 18, United States Code, Section 1961(4)
(hereinafter referred to as "the Enterprise").  The Enterprise
was engaged in, and its activities affected, interstate commerce.

C.   <u>THE PURPOSE OF THE DEFENDANTS</u>

4.  The defendants MICHAEL T. CONAHAN and MARK A.
CIAVARELLA, JR. abused their positions within the Enterprise to
enrich themselves by improperly taking payments and other things
of value from individuals and organizations doing business with
the enterprise.

D.   <u>MANNER, MEANS AND METHODS OF THE DEFENDANTS</u>

5.  Between approximately June of 2000 and January 1, 2007,
the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR.

2

abused their positions within the enterprise and violated the
fiduciary duty they owed to the citizens of the Commonwealth of
Pennsylvania and to the Judiciary of the Commonwealth of
Pennsylvania by secretly deriving more than $2,800,000 in income,
in addition to the compensation to which they were lawfully
entitled, in exchange for their official actions and anticipated
official actions.  The actions from which they derived improper
income included, but were not limited to: entering into
agreements guaranteeing placement of juvenile offenders with PA
Child Care, LLC (hereinafter referred to as "PA Child Care") and
Western PA Child Care, LLC (hereinafter referred to as "Western
PA Child Care); taking official action to remove funding from the
Luzerne County Court budget for the Luzerne County juvenile
detention facility, effectively closing the county-run youth
detention center; facilitating the construction of juvenile
detention facilities and an expansion to one of those facilities
by PA Child Care and Western PA Child Care; directing that
juvenile offenders be lodged at juvenile detention facilities
operated by PA Child Care and Western PA Child Care; summarily
granting motions to seal the record and for injunctive relief in
a civil case related to PA Child Care; and, through their
actions, assisting Pa Child Care and Western PA Child Care to
secure agreements with Luzerne County worth tens of millions of
dollars for the placement of juvenile offenders, including an

3

agreement in late 2004 worth approximately $58,000,000.

6.   The defendants employed a number of schemes in an attempt to hide the income they received including, but not limited to, causing income in the form of cash, checks and wire transfers to pass through intermediaries and causing false records to be created.

7.   In approximately June of 2000, the defendant MARK A. CIAVARELLA, JR., whose duties then included presiding over juvenile proceedings as a judge of the Court of Common Pleas for Luzerne County, had discussions with an attorney who had a law practice in Luzerne County, hereinafter referred to as "PARTICIPANT #1," who was interested in constructing a juvenile detention facility in Luzerne County.  Defendant MARK A. CIAVARELLA, JR. introduced PARTICIPANT #1 to a contractor (hereinafter referred to as "PARTICIPANT #2") who was a friend of defendant MARK A. CIAVARELLA, JR., for the purpose of locating land for the juvenile facility and for constructing the facility.

8.   PARTICIPANT #1 and another person, doing business as PA Child Care, acquired land in Luzerne County and entered into an agreement with PARTICIPANT #2 to construct a juvenile detention center to be operated by PA Child Care.

9.   On or about January 29, 2002, defendant MICHAEL T. CONAHAN, acting in his capacity as President Judge of Luzerne County, signed a "Placement Guarantee Agreement" between PA Child

4

Care and the Court of Common Pleas for Luzerne County to house juvenile offenders at the PA Child Care facility. The "Placement Guarantee Agreement" provided that the Court of Common Pleas for Luzerne County would pay PA Child Care the annual "Rental Installment" sum of $1,314,000 and stipulated that "[t]he obligation of the Court to make payment of the Rental Installments shall be absolute and unconditional."

10. In or about December, 2002, defendant MICHAEL T. CONAHAN, acting in his capacity as President Judge of Luzerne County, took official action to remove funding from the Luzerne County Court budget for the Luzerne County juvenile detention facility. The practical effect of this action was to close the Luzerne County youth detention center.

11. In or before January of 2003, defendant MICHAEL T. CONAHAN and defendant MARK A. CIAVARELLA, JR. arranged to receive a payment in the amount of $997,600 in connection with the roles they played as judges in accomplishing the construction of the PA Child Care juvenile detention facility.

12. In order to conceal the $997,600 payment to defendants CONAHAN and CIAVARELLA, JR., PARTICIPANT #1 and PARTICIPANT #2 signed a written "Registration and Commission Agreement" prepared by PARTICIPANT #2 and backdated to February 19, 2002, which purported to be an agreement for PARTICIPANT #2 to pay a broker's fee of $997,600 to PARTICIPANT #1. In fact, however, a large

5

portion of the money was paid to defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR.

13.  MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. engaged in a series of financial transactions, over time, designed to conceal the $997,600 payment made to them.  On January 21, 2003, $610,000 was wire transferred by PARTICIPANT #2 to an attorney trust account of an attorney other than PARTICIPANT #1.  The remaining $387,600 was wire transferred by PARTICIPANT #2 to a bank account under the control of PARTICIPANT #1.

14.  Thereafter, on January 28, 2003, the $610,000 in the attorney trust account was wire transferred to a bank account of Beverage Marketing of PA, Inc., a business entity controlled by defendant MICHAEL T. CONAHAN.

15.  In a series of financial transactions thereafter, a portion of the $610,000 payment was passed from defendant MICHAEL T. CONAHAN to defendant MARK A. CIAVARELLA, JR.  For example, on or about January 28, 2003, the defendant MICHAEL T. CONAHAN directed that $330,000 of the $610,000 be wire transferred to a bank account controlled by the defendant MARK A. CIAVARELLA, JR.; on or about April 30, 2003, the defendant MICHAEL T. CONAHAN directed that an additional $75,000 of the $610,000 be wire transferred to a bank account controlled by the defendant MARK A. CIAVARELLA, JR.; on or about July 15, 2003, the defendant MICHAEL T. CONAHAN directed that an additional $75,000 of the $610,000

6

wire transferred to a bank account under the control of the

defendant MARK A. CIAVARELLA, JR.; on or about August 13, 2003,

the defendant MICHAEL T. CONAHAN directed that an additional

$25,000 of the $610,000 be wire transferred to a bank account

under the control of a third party; and, on or about August 20,

2003, the defendant MICHAEL T. CONAHAN directed that an

additional $105,000 of the $610,000 be transferred to a bank

account under the control of the defendant MICHAEL T. CONAHAN.

16.   To conceal the payments to defendants MICHAEL T.

CONAHAN and MARK A. CIAVARELLA, JR., defendant MICHAEL T. CONAHAN

directed that false entries be made in the books and records of

Beverage Marketing of PA, Inc.

17.   To further conceal the $997,600 payment made to MICHAEL

T. CONAHAN and MARK A. CIAVARELLA, JR., a portion of the $387,600

wire transfer made by PARTICIPANT #2 to PARTICIPANT #1 on January

28, 2003, was paid to the defendants MICHAEL T. CONAHAN and MARK

A. CIAVARELLA, JR. in a series of financial transactions which

occurred over time.   One of those transactions occurred on or

about August 29, 2003, when a check in the amount of $326,000,

drawn on a bank account under the control of PARTICIPANT #1 was

deposited into a bank account maintained in the name of the wife

of defendant MICHAEL T. CONAHAN and under the control of the

defendant MICHAEL T. CONAHAN.

18.   Due to the success of the juvenile detention facility

operated in Luzerne County, PARTICIPANT #1 and his partner, doing business as Western PA Child Care, constructed a juvenile detention facility in western Pennsylvania.  PARTICIPANT #2, the same contractor who built the facility in Luzerne County, was employed to construct the Western PA Child Care facility.  In July of 2005, upon completion of construction, a $1,000,000 payment was made to defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. by PARTICIPANT #1.

19.  In order to conceal the payment to defendants CONAHAN and CIAVARELLA, JR., PARTICIPANT #1 and PARTICIPANT #2 signed a written "Registration and Commission Agreement" prepared by PARTICIPANT #2 which purported to be an agreement for PARTICIPANT #2 to pay a broker's fee of $1,000,000 to PARTICIPANT #1.  In fact, however, the money was wire transferred by PARTICIPANT #2 to a bank account of the Pinnacle Group of Jupiter, LLC, a business entity owned by the wives of MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR.

20.  PARTICIPANT #1 and his partner, doing business as PA Child Care, constructed an addition to the juvenile detention facility in Luzerne County.  PARTICIPANT #2, the same contractor who built the facility, was employed to complete the expansion project and, in February of 2006, upon completion of construction of the addition, a $150,000 payment was made to defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR.

21.  In order to conceal the payment to defendants CONAHAN and CIAVARELLA, JR., PARTICIPANT #1 and PARTICIPANT #2 signed a written "Registration and Commission Agreement" prepared by PARTICIPANT #2 which purported to be an agreement for PARTICIPANT #2 to pay a broker's fee of $150,000 to PARTICIPANT #1.  In fact, however, the money was wire transferred by PARTICIPANT #2 to a bank account of the Pinnacle Group of Jupiter, LLC, a business entity owned by the wives of MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR.

22.  In approximately February of 2003, when construction of the PA Child Care juvenile detention facility was completed, defendant MARK A. CIAVARELLA, JR., in his capacity as a juvenile court judge, began directing that youthful offenders be sent to that facility.  Between approximately February of 2003 and January 1, 2007, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. demanded and received from PARTICIPANT #1 hundreds of thousands of dollars in payments for their past and anticipated future official actions relating to PA Child Care and Western PA Child Care and took steps to conceal and disguise the nature, location, source, ownership and control of the money paid by PARTICIPANT #1.

23.  Some of the payments were made by checks drawn on one or more bank accounts under the control of PARTICIPANT #1 and were made payable to the Pinnacle Group of Jupiter, LLC.  The

payments included, but were not necessarily limited to, the
following: $18,000 paid on or about January 13, 2004; $52,000
paid on or about January 13, 2004; $78,000 paid on or about
February 15, 2004; $75,000 paid on or about February 15, 2004;
$47,000 paid on or about February 15, 2004; $75,000 paid on or
about April 30, 2004; and $25,000 paid on or about April 30,
2004.

24.   To conceal the payments to defendant MICHAEL T. CONAHAN
and defendant MARK A. CIAVARELLA, JR., PARTICIPANT #1 made false
notations on the checks and defendant MICHAEL T. CONAHAN directed
that false entries be made in the books and records of Pinnacle
Group of Jupiter, LLC and Beverage Marketing of PA, Inc.

25.   In addition to payments by check, some of the payments
were made by wire transfers made from one or more bank accounts
under the control of PARTICIPANT #1 and were transferred to an
account under the control of the Pinnacle Group of Jupiter, LLC.
The payments included, but were not necessarily limited to, the
following: $120,000 transferred on July 12, 2004; and $100,000
transferred on September 23, 2004.

26.   Additional payments to the defendants from PARTICIPANT
#1 were cash payments.  Those cash payments included, but were
not necessarily limited to, the following: $42,000 paid on or
about August 16, 2006; $20,000 paid on or about November 1, 2006;
$50,000 paid on or about November 20, 2006; $31,500 paid on or

about December 18, 2006.

27.   In order to conceal the more than $2,800,000 in unlawful payments they received, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. knowingly and intentionally filed materially false annual statements of financial interests with the Administrative Office of the Pennsylvania Courts in which they failed to disclose the source of these payments and in which they failed to disclose their financial relationship with PARTICIPANT #1, PARTICIPANT #2, PA Child Care and Western PA Child Care, all of which were material matters.

E.   THE PATTERN OF RACKETEERING ACTIVITY

28.   The pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and (5), through which the defendants conducted and participated in the conduct of the affairs of the enterprise, included the following racketeering acts, among others:

a.   Racketeering Act One (Wire Fraud) - Wire Transfers Totaling $997,600 Made In Connection With Construction of PA Child Care Juvenile Detention Facility

29.   Between on or about June of 2000 and on or about January 1, 2004, the exact dates being unknown, in the Middle District of Pennsylvania, and elsewhere, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. devised and intended to devise a material scheme and artifice to defraud and deprive the Judiciary of the Commonwealth of Pennsylvania and the citizens of

11

the Commonwealth of Pennsylvania of their rights to the honest services of MICHAEL T. CONAHAN and MARK A CIAVARELLA, JR., performed free from deceit, favoritism, bias, self-enrichment, self-dealing, concealment, and conflicts of interest.

30.   The defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR., together with other persons known and unknown, committed the following acts, any one of which alone constitutes Racketeering Act One.

   i.   RACKETEERING ACT 1.1

31.   On or about January 21, 2003, for the purpose of executing the scheme and artifice to defraud and deprive the citizens of Luzerne County and the Commonwealth of Pennsylvania of their right to the honest services of the defendants, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. knowingly transmitted and caused to be transmitted by means of wire communication in interstate or foreign commerce a wire transfer of $610,000 to an attorney escrow bank account, in violation of Title 18, United States Code, §§ 2, 1343 and 1346.

   ii.  RACKETEERING ACT 1.2

32.   On or about January 24, 2003, for the purpose of executing the scheme and artifice to defraud and deprive the citizens of Luzerne County and the Commonwealth of Pennsylvania of their right to the honest services of the defendants, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR.

knowingly transmitted and caused to be transmitted by means of wire communication in interstate or foreign commerce a wire transfer of $387,600 to an attorney bank account, in violation of Title 18, United States Code, §§ 2, 1343 and 1346.

> b.   <u>Racketeering Act Two (Wire Fraud) - $1,000,000 Payment Made to Conahan and Ciavarella In Connection With Construction of Western PA Child Care Juvenile Detention Facility</u>

33.   Between on or about January 1, 2004 and on or about July 15, 2005, the exact dates being unknown, in the Middle District of Pennsylvania, and elsewhere, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. devised and intended to devise a material scheme and artifice to defraud and deprive the Judiciary of the Commonwealth of Pennsylvania and the citizens of the Commonwealth of Pennsylvania of their rights to the honest services of MICHAEL T. CONAHAN and MARK A CIAVARELLA, JR., performed free from deceit, favoritism, bias, self-enrichment, self-dealing, concealment and conflicts of interest.

34.   On or about July 15, 2005, for the purpose of executing the scheme and artifice to defraud and deprive the citizens of Luzerne County and the Commonwealth of Pennsylvania of their right to the honest services of the defendants, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. knowingly transmitted and caused to be transmitted by means of wire communication in interstate or foreign commerce a wire transfer of $1,000,000 to a bank account of the Pinnacle Group of Jupiter,

LLC, in violation of Title 18, United States Code, §§ 2, 1343 and 1346.

    c.    <u>Racketeering Act Three (Wire Fraud) - Payment of $150,000 Made to Conahan and Ciavarella In Connection With Expansion of PA Child Care Juvenile Detention Facility</u>

35. From on or about January 1, 2005 to on or about February 3, 2006, the exact dates being unknown, in the Middle District of Pennsylvania, and elsewhere, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. devised and intended to devise a material scheme and artifice to defraud and deprive the Judiciary of the Commonwealth of Pennsylvania and the citizens of the Commonwealth of Pennsylvania of their rights to the honest services of MICHAEL T. CONAHAN and MARK A CIAVARELLA, JR., performed free from deceit, favoritism, bias, self-enrichment, self-dealing, concealment, and conflicts of interest.

36. On or about February 3, 2006, for the purpose of executing the scheme and artifice to defraud and deprive the citizens of Luzerne County and the Commonwealth of Pennsylvania of their right to the honest services of the defendants, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. knowingly transmitted and caused to be transmitted by means of wire communication in interstate or foreign commerce a wire transfer of $150,000 to a bank account of the Pinnacle Group of Jupiter, LLC, in violation of Title 18, United States Code, §§ 2, 1343 and 1346.

    d.    <u>Racketeering Act Four - ($70,000 Paid to Conahan and Ciavarella On January 20, 2004)</u>

37.  In furtherance of the offense, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR., committed the following acts, any one of which alone constitutes Racketeering Act Four.

    i.    RACKETEERING ACT 4.1 (Extortion Under Color of Official Right - Checks Totaling $70,000)

38.  On or about January 20, 2004, in the Middle District of Pennsylvania, and elsewhere, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. did knowingly, intentionally and wilfully affect, and attempt to affect, interstate commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, § 1951; that is, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. obtained property from another, namely, two checks totaling $70,000, which were payable from a bank account controlled by PARTICIPANT #1, not due the defendants or their office, with that other's consent, under color of official right, in violation of Title 18, United States Code, § 1951.

    ii.    RACKETEERING ACT 4.2 (Bribery Chargeable Under State Law - Checks Totaling $70,000)

39.  On or about January 20, 2004, in the Middle District of Pennsylvania, and elsewhere, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. did knowingly commit bribery, that is, the defendants solicited, accepted and agreed to accept from another, namely PARTICIPANT #1, monetary benefits, to wit, two

checks totaling $70,000, which were payable from a bank account controlled by PARTICIPANT #1, as consideration for violations of known legal duties of the defendants as public servants, in violation of Title 18, Pa.C.S. § 4701(a)(3).

    e.    <u>Racketeering Act Five - ($200,000 Paid to Conahan and Ciavarella Between February 15, 2004 and February 24, 2004)</u>

40.  In furtherance of the offense, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR., committed the following acts, any one of which alone constitutes Racketeering Act Five.

    i.    RACKETEERING ACT 5.1 (Extortion Under Color of Official Right - Checks Totaling $200,000)

41.  Between on or about February 15, 2004 and on or about February 24, 2004, in the Middle District of Pennsylvania, and elsewhere, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. did knowingly, intentionally and wilfully affect, and attempt to affect, interstate commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, § 1951; that is, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. obtained property from another, namely, three checks totaling $200,000, which were payable from a bank account of Vision Holdings, Inc. controlled by PARTICIPANT #1, not due the defendants or their office, with that other's consent, under color of official right, in violation of Title 18, United States Code, § 1951.

16

ii.   RACKETEERING ACT 5.2 (Bribery Chargeable Under State
Law - Checks Totaling $200,000)

42.   Between on or about February 15, 2004 and on or about
February 24, 2004, in the Middle District of Pennsylvania, and
elsewhere, the defendants MICHAEL T. CONAHAN and MARK A.
CIAVARELLA, JR. did knowingly commit bribery, that is, the
defendants solicited, accepted and agreed to accept from another,
namely PARTICIPANT #1, monetary benefits, to wit, three checks
totaling $200,000, which were payable from a bank account of
Vision Holdings, Inc. controlled by PARTICIPANT #1, as
consideration for violations of known legal duties of the
defendants as public servants, in violation of Title 18, Pa.C.S.
§ 4701(a)(3).

f.   Racketeering Act Six - ($100,000 Paid to Conahan and
Ciavarella on Or About April 30, 2004)

43.   In furtherance of the offense, the defendants MICHAEL
T. CONAHAN and MARK A. CIAVARELLA, JR., committed the following
acts, any one of which alone constitutes Racketeering Act Six.

i.   RACKETEERING ACT 6.1 (Extortion Under Color of Official
Right - Checks Totaling $100,000)

44.   On or about April 30, 2004, in the Middle District of
Pennsylvania, and elsewhere, the defendants MICHAEL T. CONAHAN
and MARK A. CIAVARELLA, JR. did knowingly, intentionally and
wilfully affect, and attempt to affect, interstate commerce and
the movement of articles and commodities in commerce by
extortion, as those terms are defined in Title 18, United States

17

Code, § 1951; that is, the defendants MICHAEL T. CONAHAN and MARK

A. CIAVARELLA, JR. obtained property from another, namely, two

checks totaling $100,000, which were payable from a bank account

of Vision Holdings, Inc. controlled by PARTICIPANT #1, not due

the defendants or their office, with that other's consent, under

color of official right, in violation of Title 18, United States

Code, § 1951.

   ii. RACKETEERING ACT 6.2 (Bribery Chargeable Under State
     Law - Checks Totaling $100,000)

  45. On or about April 30, 2004, in the Middle District of

Pennsylvania, and elsewhere, the defendants MICHAEL T. CONAHAN

and MARK A. CIAVARELLA, JR. did knowingly commit bribery, that

is, the defendants solicited, accepted and agreed to accept from

another, namely PARTICIPANT #1, monetary benefits, to wit, two

checks totaling $100,000, which were payable from a bank account

of Vision Holdings, Inc. controlled by PARTICIPANT #1, as

consideration for violations of known legal duties of the

defendants as public servants, in violation of Title 18, Pa.C.S.

§ 4701(a)(3).

   g. <u>Racketeering Act Seven - ($120,000 Paid to Conahan
     and Ciavarella on July 12, 2004)</u>

  46. In furtherance of the offense, the defendants MICHAEL

T. CONAHAN and MARK A. CIAVARELLA, JR., committed the following

acts, any one of which alone constitutes Racketeering Act Seven.

   i. RACKETEERING ACT 7.1 (Extortion Under Color of Official
     Right - Wire Transfer of $120,000)

47.   On or about July 12, 2004, in the Middle District of Pennsylvania, and elsewhere, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. did knowingly, intentionally and wilfully affect, and attempt to affect, interstate commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, § 1951; that is, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. obtained property from another, namely, a wire transfer of $120,000, which was transferred from a bank account of Vision Holdings, Inc. controlled by PARTICIPANT #1, not due the defendants or their office, with that other's consent, under color of official right, in violation of Title 18, United States Code, § 1951.

　　ii.   RACKETEERING ACT 7.2 (Bribery Chargeable Under State
　　　　　Law - Wire Transfer of $120,000)

48.   On or about July 12, 2004, in the Middle District of Pennsylvania, and elsewhere, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. did knowingly commit bribery, that is, the defendants solicited, accepted and agreed to accept from another, namely PARTICIPANT #1, monetary benefits, to wit, a wire transfer of $120,000, which was transferred from a bank account of Vision Holdings, Inc. controlled by PARTICIPANT #1, as consideration for violations of known legal duties of the defendants as public servants, in violation of Title 18, Pa.C.S. § 4701(a)(3).

h.   Racketeering Act Eight - ($100,000 Paid to Conahan and Ciavarella on September 23, 2004)

49.   In furtherance of the offense, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR., committed the following acts, any one of which alone constitutes Racketeering Act Eight.

i.   RACKETEERING ACT 8.1 (Extortion Under Color of Official Right - Wire Transfer of $100,000)

50.   On or about September 23, 2004, in the Middle District of Pennsylvania, and elsewhere, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. did knowingly, intentionally and wilfully affect, and attempt to affect, interstate commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, § 1951; that is, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. obtained property from another, namely, a wire transfer of $100,000, which was transferred from a bank account of Vision Holdings, Inc. controlled by PARTICIPANT #1, not due the defendants or their office, with that other's consent, under color of official right, in violation of Title 18, United States Code, § 1951.

ii.   RACKETEERING ACT 8.2 (Bribery Chargeable Under State Law - Wire Transfer of $100,000)

51.   On or about September 23, 2004, in the Middle District of Pennsylvania, and elsewhere, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. did knowingly commit bribery, that is, the defendants solicited, accepted and agreed to accept from

another, namely PARTICIPANT #1, monetary benefits, to wit, a wire transfer of $100,000, which was transferred from a bank account of Vision Holdings, Inc. controlled by PARTICIPANT #1, as consideration for violations of known legal duties of the defendants as public servants, in violation of Title 18, Pa.C.S. § 4701(a)(3).

    i.  Racketeering Act Nine - ($42,000 Paid to Conahan and Ciavarella on August 16, 2006)

52.  In furtherance of the offense, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR., committed the following acts, any one of which alone constitutes Racketeering Act Nine.

    i.  RACKETEERING ACT 9.1 (Extortion Under Color of Official Right - Cash Payment of $42,000)

53.  On or about August 16, 2006, in the Middle District of Pennsylvania, and elsewhere, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. did knowingly, intentionally and wilfully affect, and attempt to affect, interstate commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, § 1951; that is, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. obtained property from another, namely, cash in the amount of $42,000, which was transferred from PARTICIPANT #1, not due the defendants or their office, with that other's consent, under color of official right, in violation of Title 18, United States Code, § 1951.

    ii.   RACKETEERING ACT 9.2 (Bribery Chargeable Under State
          Law - Cash Payment of $42,000)

54.   On or about August 16, 2006, in the Middle District of

Pennsylvania, and elsewhere, the defendants MICHAEL T. CONAHAN

and MARK A. CIAVARELLA, JR. did knowingly commit bribery, that

is, the defendants solicited, accepted and agreed to accept from

another, namely PARTICIPANT #1, monetary benefits, to wit, cash

in the amount of $42,000, which was transferred by PARTICIPANT

#1, as consideration for violations of known legal duties of the

defendants as public servants, in violation of Title 18, Pa.C.S.

§ 4701(a)(3).

    j.   <u>Racketeering Act Ten - ($20,000 Paid To Conahan And
       Ciavarella on November 1, 2006)</u>

55.   In furtherance of the offense, the defendants MICHAEL

T. CONAHAN and MARK A. CIAVARELLA, JR., committed the following

acts, any one of which alone constitutes Racketeering Act Ten.

    i.   RACKETEERING ACT 10.1 (Extortion Under Color of
          Official Right - Cash Payment of $20,000)

56.   On or about November 1, 2006, in the Middle District

of Pennsylvania, and elsewhere, the defendants MICHAEL T. CONAHAN

and MARK A. CIAVARELLA, JR. did knowingly, intentionally and

wilfully affect, and attempt to affect, interstate commerce and

the movement of articles and commodities in commerce by

extortion, as those terms are defined in Title 18, United States

Code, § 1951; that is, the defendants MICHAEL T. CONAHAN and MARK

A. CIAVARELLA, JR. obtained property from another, namely, cash

in the amount of $20,000, which was transferred from PARTICIPANT #1, not due the defendants or their office, with that other's consent, under color of official right, in violation of Title 18, United States Code, § 1951.

      ii.  RACKETEERING ACT 10.2 (Bribery Chargeable Under State Law - Cash Payment of $20,000)

57.  On or about November 1, 2006, in the Middle District of Pennsylvania, and elsewhere, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. did knowingly commit bribery, that is, the defendants solicited, accepted and agreed to accept from another, namely PARTICIPANT #1, monetary benefits, to wit, cash in the amount of $20,000, which was transferred by PARTICIPANT #1, as consideration for violations of known legal duties of the defendants as public servants, in violation of Title 18, Pa.C.S. § 4701(a)(3).

     k.  <u>Racketeering Act Eleven - ($50,000 Paid to Conahan and Ciavarella on November 20, 2006)</u>

58.  In furtherance of the offense, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR., committed the following acts, any one of which alone constitutes Racketeering Act Eleven.

      i.  RACKETEERING ACT 11.1 (Extortion Under Color of Official Right - Cash Payment of $50,000)

59.  On or about November 20, 2006, in the Middle District of Pennsylvania, and elsewhere, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. did knowingly, intentionally and wilfully affect, and attempt to affect, interstate commerce and

23

the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, § 1951; that is, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. obtained property from another, namely, cash in the amount of $50,000, which was transferred from PARTICIPANT #1, not due the defendants or their office, with that other's consent, under color of official right, in violation of Title 18, United States Code, § 1951.

    ii.  RACKETEERING ACT 11.2 (Bribery Chargeable Under State Law - Cash Payment of $50,000)

60.  On or about November 20, 2006, in the Middle District of Pennsylvania, and elsewhere, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. did knowingly commit bribery, that is, the defendants solicited, accepted and agreed to accept from another, namely PARTICIPANT #1, monetary benefits, to wit, cash in the amount of $50,0000, which was transferred by PARTICIPANT #1, as consideration for violations of known legal duties of the defendants as public servants, in violation of Title 18, Pa.C.S. § 4701(a)(3).

    1.  <u>Racketeering Act Twelve - ($31,500 Paid to Conahan and Ciavarella on December 18, 2006)</u>

61.  In furtherance of the offense, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR., committed the following acts, any one of which alone constitutes Racketeering Act Twelve.

    i.  RACKETEERING ACT 12.1 (Extortion Under Color of Official Right - Cash Payment of $31,500)

62.     On or about December 18, 2006, in the Middle District of Pennsylvania, and elsewhere, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. did knowingly, intentionally and wilfully affect, and attempt to affect, interstate commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, § 1951; that is, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. obtained property from another, namely, cash in the amount of $31,500, which was transferred from PARTICIPANT #1, not due the defendants or their office, with that other's consent, under color of official right, in violation of Title 18, United States Code, § 1951.

    ii.  RACKETEERING ACT 12.2 (Bribery Chargeable Under State Law - Cash Payment of $31,500)

63.     On or about December 18, 2006, in the Middle District of Pennsylvania, and elsewhere, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. did knowingly commit bribery, that is, the defendants solicited, accepted and agreed to accept from another, namely PARTICIPANT #1, monetary benefits, to wit, cash in the amount of $31,500, which was transferred by PARTICIPANT #1, as consideration for violations of known legal duties of the defendants as public servants, in violation of Title 18, Pa.C.S. § 4701(a)(3).

    m.  <u>Racketeering Act Thirteen (Money Laundering Conspiracy)</u>

64.     From in or about December, 2001 to on or about the date

of this Indictment, in the Middle District of Pennsylvania, and elsewhere, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. did knowingly, intentionally and wilfully combine, conspire, confederate and agree together with one another, and together with other persons both known and unknown to the grand jury, to commit the following offense against the United States, namely, to knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce which involved the proceeds of a specified unlawful activity, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, § 1956(h).

All in violation of Title 18, United States Code, §§ 2 and 1962(c).

<u>Count 2</u>

18 U.S.C. § 1962(d)
(Racketeering Conspiracy)

THE GRAND JURY FURTHER CHARGES:

65.    The allegations contained in Count 1 of this
Indictment are hereby re-alleged and incorporated by reference as
if fully set forth herein.

66.    From on or about December, 2001, the exact date being
unknown, to on or about the date of this Indictment, in the
Middle District of Pennsylvania, and elsewhere, the defendants,

MICHAEL T. CONAHAN and
MARK A. CIAVARELLA, JR.,

together with other persons known and unknown to the grand jury,
being persons employed by and associated with an Enterprise,
which Enterprise engaged in, and the activities of which
affected, interstate and foreign commerce, did knowingly and
intentionally combine, conspire, confederate and agree to violate
18 U.S.C. § 1962(c), that is, to conduct and participate,
directly and indirectly, in the conduct of the affairs of the
Enterprise through a pattern of racketeering activity, that is,
through the commission of the racketeering acts specified in
Count 1 of this Indictment, among others.

67.    As part of the conspiracy, the defendants MICHAEL T.
CONAHAN and MARK A. CIAVARELLA, JR. did agree that they and their
coconspirators would commit at least two acts of racketeering

activity which amounted to a pattern of racketeering activity in the conduct of the affairs of the Enterprise.

All in violation of Title 18, United States Code, § 1962(d).

## Counts 3-6

### 18 U.S.C. §§ 1343, 1346 and 2)
### (Honest Services Wire Fraud)

THE GRAND JURY FURTHER CHARGES:

68.   The allegations contained in Counts 1 and 2 of this Indictment are hereby re-alleged and incorporated by reference as if fully set forth herein.

69.   From in or about June, 2000, the exact date being unknown to the grand jury, to on or about the date of the filing of this Indictment, in the Middle District of Pennsylvania, and elsewhere, the defendants,

MICHAEL T. CONAHAN and
MARK A. CIAVARELLA, JR.,

each aiding and abetting the other and each aided and abetted by the other and by other persons known and unknown, devised and intended to devise a material scheme and artifice to defraud the citizens of Luzerne County, the citizens of the Commonwealth of Pennsylvania and the Judiciary of the Commonwealth of Pennsylvania and to deprive those citizens and the judiciary of their right to the honest services of MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. as judges of the Court of Common Pleas for Luzerne County, performed free from deceit, favoritism, bias, self-enrichment, self-dealing, concealment, and conflict of interest.

<u>THE RIGHT TO HONEST SERVICES</u>

70.  At all times material to this Indictment, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. were elected judges of the Court of Common Pleas for Luzerne County, Pennsylvania and as such were public officials.  The defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. owed a fiduciary duty to the public and to the Judiciary of the Commonwealth of Pennsylvania not to realize personal financial gain through their office other than compensation provided by law, to refrain from conduct that constitutes a conflict of interest or that constitutes seeking or accepting improper influence, to recuse themselves from matters in which they have a conflict of interest, and to file a truthful and complete annual statement of financial interests, reporting the sources of all income, direct or indirect.

71.  Part of the fiduciary duty owed by the defendants arose from constitutional law, including, Article 5, §§ 17(b) and 17(c) of the Pennsylvania Constitution.

72.  Part of the fiduciary duty owed by the defendants, independent of constitutional or statutory law, arose from the defendants' positions as judges of the Court of Common Pleas, including requirements of the Pennsylvania Code of Judicial Conduct and Administrative Orders of the Pennsylvania Supreme Court regarding matters related to Judges of the Court of Common

Pleas.   Among other things, the fiduciary duty owed by the
defendants included the duty arising from their positions as
judges to disclose material information affecting their ability
to engage in impartial decision-making.

<u>MANNER, MEANS AND METHODS OF THE DEFENDANTS</u>

73.   It was a part of the scheme and artifice to defraud
that the defendants agreed together, and with others known and
unknown to the Grand Jury, to engage in the course of conduct
alleged in the "MANNER, MEANS AND METHODS OF THE DEFENDANTS"
section of Count 1 of this Indictment.   Those allegations are
hereby re-alleged and incorporated by reference as if fully set
forth herein.   As further described herein, the defendants
defrauded the citizens of Luzerne County, the citizens of the
Commonwealth of Pennsylvania and the Judiciary of the
Commonwealth of Pennsylvania and deprived those citizens and the
Judiciary of their right to the honest services of the defendants
by: (1) engaging in undisclosed biased decision-making for
personal gain; and, (2) knowingly soliciting, extorting and
accepting <u>quid</u> <u>pro</u> <u>quo</u> bribes as part of a generalized agreement
to improperly exert influence on behalf of the bribe payer as
specific opportunities arose to do so.

74.   It was further a part of the scheme and artifice to
defraud that the defendants MICHAEL T. CONAHAN and MARK A.
CIAVARELLA, JR. knowingly and intentionally filed materially

false annual statements of financial interests with the
Administrative Office of the Pennsylvania Courts in which they
failed to disclose the source of income they received and in
which they failed to disclose their financial relationship with
PARTICIPANT #1, PARTICIPANT #2, PA Child Care and Western PA
Child Care, which were material matters.

75.  It was further a part of the scheme and artifice to
defraud that the defendants MICHAEL T. CONAHAN and MARK A.
CIAVARELLA, JR., acting on behalf of the Court of Common Pleas
for Luzerne County in matters in which they had discretionary
decision-making authority, knowingly and intentionally issued
written, oral and wire communications which were materially false
to the extent that the defendants did not disclose their conflict
of interest and their financial relationship with PARTICIPANT #1,
PARTICIPANT #2, PA Child Care and Western PA Child Care, which
were material matters.

76.  It was further a part of the scheme and artifice to
defraud that the defendants MICHAEL T. CONAHAN and MARK A.
CIAVARELLA, JR., acting on behalf of the Court of Common Pleas
for Luzerne County in matters in which they had discretionary
decision-making authority, knowingly and intentionally issued
reports and statements to the Administrative Office of the
Pennsylvania Courts which were materially false to the extent
that the defendants did not disclose their conflict of interest

and their financial relationship with PARTICIPANT #1 PARTICIPANT
#2, PA Child Care and Western PA Child Care, which were material
matters.

77.   It was further a part of the scheme and artifice to
defraud that the defendant MICHAEL T. CONAHAN entered into
agreements guaranteeing placement of juvenile offenders with PA
Child Care and Western PA Child Care and took official action to
remove funding from the Luzerne County Court budget for the
Luzerne County juvenile detention facility.   The practical effect
of this action was to close the Luzerne County youth detention
center.   The defendants MICHAEL T. CONAHAN and MARK A.
CIAVARELLA, JR., through their actions, facilitated the
construction of juvenile detention facilities and an expansion to
one of those facilities by PA Child Care and Western PA Child
Care and directed that juvenile offenders be lodged at juvenile
detention facilities operated by PA Child Care and Western PA
Child Care.   Through their actions, the defendants assisted Pa
Child Care and Western PA Child Care to secure agreements with
Luzerne County worth tens of millions of dollars for the
placement of juvenile offenders, including an agreement in late
2004 worth approximately $58,000,000.   It was further a part of
the scheme and artifice to defraud that, on a number of
occasions, accused juvenile offenders were ordered detained by
the defendant MARK A. CIAVARELLA, JR. even when Juvenile

33

Probation Officers did not recommend detention and even when detention was unreasonable and unwarranted under the circumstances.  The defendant MARK A. CIAVARELLA, JR., and others operating at his behest, also exerted pressure on staff of the Court of Common Pleas to recommend detention of juvenile offenders.  On some occasions, probation officers were pressured to change recommendations of release to recommendations of detention.  In his capacity as President Judge, the defendant MICHAEL T. CONAHAN took actions relating to proceedings involving juvenile offenders who were sent to PA Child Care and Western PA Child Care facilities.  The foregoing actions, as well as other actions, of the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. related to matters in which they had discretionary decision-making authority.  The defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. took these actions, and other actions, without recusing themselves from matters in which they had a conflict of interest and without disclosing to parties involved in court proceedings, and to the Administrative Office of the Pennsylvania Courts, their conflict of interest and the financial relationship that existed between the defendants and PARTICIPANT #1, PARTICIPANT #2, PA Child Care and Western PA Child Care, which were material matters.

78.  It was further a part of the scheme and artifice to defraud that the defendants MICHAEL T. CONAHAN and MARK A.

34

CIAVARELLA, JR. violated their duties of independence, impartiality and integrity in the exercise of their discretionary actions on behalf of the Court of Common Pleas for Luzerne County by failing to recuse themselves from acting in matters in which they had a material conflict of interest and in failing to disclose to parties appearing before the court and to the Administrative Office of the Pennsylvania Courts their conflict of interest and their financial relationship with PARTICIPANT #1, PARTICIPANT #2, PA Child Care and Western PA Child Care, which were material matters.

79.   It was further a part of the scheme and artifice to defraud that the defendant MARK A. CIAVARELLA, JR. adopted procedures in juvenile court which resulted in juveniles appearing without counsel and without creation of a normal court record.   The adoption of these procedures was accomplished through the discretionary decision-making authority of the defendant MARK A. CIAVARELLA, JR.   The adoption of these procedures resulted in violation of the constitutional right to counsel afforded juvenile offenders and created the potential for an increased number of juvenile offenders to be sent to the juvenile detention facilities of PA Child Care and Western PA Child Care.   The defendant MARK A. CIAVARELLA, JR. took these actions without disclosing to the parties before the court and to the Administrative Office of the Courts his conflict of interest

and the financial relationship that existed between the defendant MARK A. CIAVARELLA, JR. and PARTICIPANT #1, PARTICIPANT #2, PA Child Care and Western PA Child Care, which were material matters.

80.  It was further a part of the scheme and artifice to defraud that the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. otherwise conducted the affairs of the Court of Common Pleas, in matters in which they had discretionary decision-making authority, without disclosing their conflict of interest and financial relationship with PARTICIPANT #1, PARTICIPANT #2, PA Child Care and Western PA Child Care, knowing that these were material matters that should have been disclosed to parties appearing before the court, to the Administrative Office of Courts and to other persons and entities.

81.  It was further a part of the scheme and artifice to defraud that the defendants knowingly solicited, extorted and accepted quid pro quo bribes as part of a generalized agreement to improperly exert influence on behalf of PARTICIPANT #1, PA Child Care and Western PA Child Care as specific opportunities arose to do so.  For instance, as part of the scheme and artifice to defraud, the defendant MICHAEL T. CONAHAN summarily granted a motion to seal the record and for injunctive relief in a civil case related to PA Child Care.

## EXECUTION OF THE SCHEME

82.   On or about the date of each count listed below, in the Middle District of Pennsylvania and elsewhere, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR., each aiding and abetting the other and each aided and abetted by the other and by other persons known and unknown, for the purpose of executing the above-described material scheme and artifice to defraud and deprive the citizens of Luzerne County, the citizens of the Commonwealth of Pennsylvania and the Judiciary of the Commonwealth of Pennsylvania of their right to the honest services of the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR., transmitted and caused to be transmitted by means of wire communication in interstate commerce, the following writings, signals and sounds:

| Count | Date | Wire Transmission |
|-------|------|-------------------|
| 3 | July 12, 2004 | Electronic funds transfer of $120,000 transferred from an account of Vision Holdings, Inc. to an account of the Pinnacle Group of Jupiter, LLC. |
| 4 | September 23, 2004 | Electronic funds transfer of $100,000 transferred from an account of Vision Holdings, Inc. |
| 5 | July 15, 2005 | Electronic funds transfer of $1,000,000 transferred from an account of Mericle Construction, Inc. to an account of Pinnacle Group of Jupiter, LLC. |

37

| Count | Date | Wire Transmission |
|---|---|---|
| 6 | February 3, 2006 | Electronic funds transfer of $150,000 transferred from an account of Mericle Construction, Inc. to an account of Pinnacle Group of Jupiter, LLC. |

In violation of Title 18, United States Code, §§ 2, 1343 and 1346.

## Counts 7-10

### 18 U.S.C. §§ 1341, 1346 and 2
### (Honest Services Mail Fraud)

THE GRAND JURY FURTHER CHARGES:

83.   The allegations contained in Counts 1 through 6 of this Indictment are hereby re-alleged and incorporated by reference as if fully set forth herein.

84.   From in or about January, 2001, the exact date being unknown to the grand jury, to on or about the date of the filing of this Indictment, in the Middle District of Pennsylvania, and elsewhere, the defendant,

MICHAEL T. CONAHAN,

devised and intended to devise a material scheme and artifice to defraud the citizens of Luzerne County, the citizens of the Commonwealth of Pennsylvania and the Judiciary of the Commonwealth of Pennsylvania and to deprive those citizens and the Judiciary of their right to the honest services of MICHAEL T. CONAHAN as a judge of the Court of Common Pleas for Luzerne County, performed free from deceit, favoritism, bias, self-enrichment, self-dealing, concealment and conflicts of interest.

### EXECUTION OF THE SCHEME

85.   On or about the date of each count listed below, in the Middle District of Pennsylvania and elsewhere, the defendant MICHAEL T. CONAHAN, for the purpose of executing the above-

described material scheme and artifice to defraud and deprive the
citizens of Luzerne County, the citizens of the Commonwealth of
Pennsylvania and the Judiciary of the Commonwealth of
Pennsylvania of their right to the honest services of the
defendant MICHAEL T. CONAHAN, caused to be delivered by the
United States Postal Service and by any private and commercial
interstate carrier to the Administrative Office of the
Pennsylvania Courts in Philadelphia, Pennsylvania, and thereafter
caused to be delivered by the United States Postal Service and by
any private and commercial interstate carrier to the Judicial
Conduct Board of Pennsylvania in Harrisburg, Middle District of
Pennsylvania, the following things:

| Count | Date | Description of Thing |
| --- | --- | --- |
| 7 | April, 2004 | Materially false annual statement of financial interests submitted to the Administrative Office of the Pennsylvania Courts |
| 8 | March, 2005 | Materially false annual statement of financial interests submitted to the Administrative Office of the Pennsylvania Courts |
| 9 | March, 2006 | Materially false annual statement of financial interests submitted to the Administrative Office of the Pennsylvania Courts |

| Count | Date | Description of Thing |
|---|---|---|
| 10 | April, 2007 | Materially false annual statement of financial interests submitted to the Administrative Office of the Pennsylvania Courts |

In violation of Title 18, United States Code, §§ 2, 1341 and 1346.

<u>Counts 11-14</u>

18 U.S.C. §§ 1341, 1346 and 2)
(Honest Services Mail Fraud)

THE GRAND JURY FURTHER CHARGES:

86.  The allegations contained in Counts 1 through 10 of this Indictment are hereby re-alleged and incorporated by reference as if fully set forth herein.

87.  From in or about January, 2001, the exact date being unknown to the grand jury, to on or about the date of the filing of this Indictment, in the Middle District of Pennsylvania, and elsewhere, the defendant,

MARK A. CIAVARELLA, JR.,

devised and intended to devise a material scheme and artifice to defraud the citizens of Luzerne County, the citizens of the Commonwealth of Pennsylvania and the Judiciary of the Commonwealth of Pennsylvania and to deprive those citizens and the Judiciary of their right to the honest services of MARK A. CIAVARELLA, JR., as a judge of the Court of Common Pleas for Luzerne County, performed free from deceit, favoritism, bias, self-enrichment, self-dealing, concealment and conflicts of interest.

<u>EXECUTION OF THE SCHEME</u>

88.  On or about the date of each count listed below, in the Middle District of Pennsylvania and elsewhere, the defendant MARK A. CIAVARELLA, JR., for the purpose of executing the above-

42

described material scheme and artifice to defraud and deprive the citizens of Luzerne County, the citizens of the Commonwealth of Pennsylvania and the Judiciary of the Commonwealth of Pennsylvania of their right to the honest services of the defendant MARK A. CIAVARELLA, JR., caused to be delivered by the United States Postal Service and by any private and commercial interstate carrier to the Administrative Office of the Pennsylvania Courts in Philadelphia County, Eastern District of Pennsylvania, and thereafter caused to be delivered by the United States Postal Service and by any private and commercial interstate carrier to the Judicial Conduct Board of Pennsylvania in Harrisburg, Middle District of Pennsylvania, the following things:

| Count | Date | Description of Thing |
|-------|------|----------------------|
| 11 | April, 2004 | Materially false annual statement of financial interests submitted to the Administrative Office of the Pennsylvania Courts |
| 12 | March, 2005 | Materially false annual statement of financial interests submitted to the Administrative Office of the Pennsylvania Courts |
| 13 | April, 2006 | Materially false annual statement of financial interests submitted to the Administrative Office of the Pennsylvania Courts |

| <u>Count</u> | <u>Date</u> | <u>Description of Mailing</u> |
|---|---|---|
| 14 | March, 2007 | Materially false annual statement of financial interests submitted to the Administrative Office of the Pennsylvania Courts |

In violation of Title 18, United States Code, §§ 2, 1341 and 1346.

## Counts 15-24

18 U.S.C. § 666(a)(1)(B)
(Corrupt Receipt of Bribe/Reward for Official Action
Concerning Programs Receiving Federal Funds)

THE GRAND JURY FURTHER CHARGES:

89.   The allegations contained in Counts 1 through 14 of this Indictment are hereby re-alleged and incorporated by reference as if fully set forth herein.

90.   As elected judges of the Court of Common Pleas for Luzerne County the defendants were agents of a number of government entities, including, but not limited to, the Administrative Office of the Pennsylvania Courts, a government agency of the Commonwealth of Pennsylvania that employed the defendants as judges.

91.   The Commonwealth of Pennsylvania, Luzerne County and the Court of Common Pleas for Luzerne County each received federal assistance in excess of $10,000 during each one-year period beginning on January 1, 2002 and extending through December 31, 2007.

92.   Between on or about January 1, 2002 and on or about January 1, 2007, in the Middle District of Pennsylvania, and elsewhere, the defendants,

MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR.,

each aiding and abetting the other and each aided and abetted by the other and by other persons known and unknown, did knowingly,

45

intentionally and corruptly solicit and demand for their own benefit, and did accept, and agree to accept, from another person, multiple monetary payments in amounts of more than $5,000, intending to be influenced and rewarded in connection with the business of the government entities they represented as judges of the Court of Common Pleas for Luzerne County.  In particular, payments were made to and accepted by the defendants in connection with official actions taken and intended to taken by the defendants to facilitate the planning, construction and operation of juvenile detention facilities owned, constructed and operated by PA Child Care and Western PA Child Care.

Each of the following monetary payments, which occurred on or about the dates indicated, constitutes a separate count of this Indictment:

| Count | Date | Payment From | Amount and Type of Payment |
|---|---|---|---|
| 15 | 2-15-2004- 2-24-2004 | Vision Holdings, Inc. | $200,000 (total of three checks) |
| 16 | 4-30-2004 | Vision Holdings, Inc. | $100,000 (total of two checks) |
| 17 | 7-12-2004 | Vision Holdings, Inc. | $120,000 Wire Transfer |
| 18 | 9-23-2004 | Vision Holdings, Inc. | $100,000 Wire Transfer |

| Count | Date | Payment From | Amount and Type of Payment |
|-------|------|--------------|----------------------------|
| 19 | 7-15-2005 | Mericle Construction, Inc. | $1,000,000 Wire Transfer |
| 20 | 2-3-2006 | Mericle Construction, Inc. | $150,000 Wire Transfer |
| 21 | 8-16-06 | Robert Powell | $42,000 Cash |
| 22 | 11-1-06 | Robert Powell | $20,000 Cash |
| 23 | 11-20-06 | Robert Powell | $50,000 Cash |
| 24 | 12-18-06 | Robert Powell | $31,500 Cash |

In violation of Title 18, United States Code, §§ 2 and 666(a)(1)(B).

## Count 25

18 U.S.C. § 1956(h)
(Money Laundering Conspiracy)

THE GRAND JURY FURTHER CHARGES:

93.    The allegations contained in Counts 1 through 24 of this Indictment are hereby re-alleged and incorporated by reference as if fully set forth herein.

94.  From on or about January 1, 2001, and continuing up to on or about the date of this Indictment, in the Middle District of Pennsylvania and elsewhere, the defendants,

MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR.,

together with others known and unknown to the Grand Jury, did knowingly, intentionally and wilfully combine, conspire, confederate and agree with one another and with other persons known and unknown to the grand jury to commit certain offenses against the United States as follows:

a.  Knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, conducted and attempted to conduct a financial transaction which in fact involved the proceeds of the specified unlawful activity knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of a specified unlawful activity in violation of 18 U.S.C.
§ 1956(a)(1)(B)(i); and,

b.  To knowingly engage and attempt to engage in one or more monetary transaction(s) in criminally derived property that was of a value greater than $10,000 and which was derived from specified unlawful activity, namely, wire fraud and extortion, in violation of 18

U.S.C. 1957.

In violation of Title 18, United States Code, § 1956(h).

<u>Count 26</u>

18 U.S.C. §  1956(a)(1)(B)(i)
(Money Laundering)

THE GRAND JURY FURTHER CHARGES:

95.  The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations contained in Counts 1 through 25 of this Indictment.

96.  On or about January 20, 2004, in the Middle District of Pennsylvania, and elsewhere, the defendants,

MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR.,

each aiding and abetting the other and each aided and abetted by the other and by other persons known and unknown, did knowingly and intentionally conduct, attempt to conduct and did cause to be conducted a financial transaction affecting interstate commerce, to wit, the depositing of the following two checks:

    a.    Check number 101 in the amount of $18,000, identified on the face of the check as "Rent Prepay," and

    b.    Check number 1002 in the amount of $52,000, identified on the face of the check as "Rent/Marine Prepay,"

issued to the Pinnacle Group of Jupiter, LLC, which involved the proceeds of a specified unlawful activity, that is, extortion under color of official right, in violation of 18 U.S.C. §1951, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity

50

and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transactions, that is, funds in the amount of $70,000, represented the proceeds of some form of unlawful activity.

In violation of Title 18, United States Code, §§ 1956(a)(1)(B)(i) and 2.

<u>Count 27</u>

18 U.S.C. §  1956(a)(1)(B)(i)
(Money Laundering)

THE GRAND JURY FURTHER CHARGES:

97.  The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations contained in Counts 1 through 26 of this Indictment.

98.  On or about February 24, 2004, in the Middle District of Pennsylvania and elsewhere, the defendants,

MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR.,

each aiding and abetting the other and each aided and abetted by the other and by other persons known and unknown, did knowingly conduct, attempt to conduct and did cause to be conducted a financial transaction affecting interstate commerce, to wit, the depositing of the following three checks:

1.   Check number 161 in the amount of $78,000, identified on the face of the check as "Reserving Lease,"

2.   Check number 162 in the amount of $75,000, identified on the face of the check as "Rental Feb-Mar April," and

3.   Check number 163 in the amount of $47,000, identified on the face of the check as "Slip Rental/Fees Jan-Feb-March & April,"

issued to the Pinnacle Group of Jupiter, LLC which involved the proceeds of a specified unlawful activity, that is, extortion under color of official right, in violation of 18 U.S.C. §1951, knowing that the transaction was designed in whole and in part to

52

conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity and that while conduction and attempting to conduct such financial transaction knew that the property involved in the financial transaction, that is funds in the amount of $200,000 represented the proceeds of some form of unlawful activity.

In violation of Title 18, United States Code, §§ 1956(a)(1)(B)(i) and 2.

<u>Count 28</u>

18 U.S.C. § 1956(a)(1)(B)(i)
(Money Laundering)

THE GRAND JURY FURTHER CHARGES:

99.  The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations contained in Counts 1 through 27 of this Indictment.

100.  On or about May 3, 2004, in the Middle District of Pennsylvania and elsewhere, the defendants,

MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR.,

each aiding and abetting the other and each aided and abetted by the other and by other persons known and unknown, did knowingly conduct, attempt to conduct and did cause to be conducted a financial transaction affecting interstate commerce, to wit, the depositing of the following two  checks:

1.  Check number 176 in the amount of $75,000, identified on the face of the check as "Lease Expenses April May June," and

2.  Check number 177 in the amount of $25,000, identified on the face of the check as "Dock Expenses Related April May June,"

issued to the Pinnacle Group of Jupiter, LLC, which involved the proceeds of a specified unlawful activity, that is, extortion in violation of 18 U.S.C. §1951, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said

54

specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction, that is, funds in the amount of $100,000, represented the proceeds of some form of unlawful activity.

In violation of Title 18, United States Code, §§ 1956(a)(1)(B)(i) and 2.

### Count 29

18 U.S.C. §  1956(a)(1)(B)(i)
(Money Laundering)

THE GRAND JURY FURTHER CHARGES:

101.  The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations contained in Counts 1 through 28 of this Indictment.

102.  On or about July 12, 2004, in the Middle District of Pennsylvania and elsewhere, the defendants,

MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR.,

each aiding and abetting the other and each aided and abetted by the other and by other persons known and unknown, did knowingly conduct, attempt to conduct and did cause to be conducted a financial transaction affecting interstate commerce, to wit, a wire transfer in the amount of $120,000 from an account of Vision Holdings, Inc., to an account of the Pinnacle Group of Jupiter, LLC, which involved the proceeds of a specified unlawful activity, that is, honest services wire fraud, in violation of 18 U.S.C. §§ 1343 and 1346, extortion under color of official right, in violation of 18 U.S.C. §1951, and bribery, in violation of 18 Pa.C.S. § 4701(a)(3), knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the

56

property involved in the financial transaction, that is, funds in the amount of $120,000, represented the proceeds of some form of unlawful activity.

In violation of Title 18, United States Code, §§ 1956(a)(1)(B)(i) and 2.

<u>Count 30</u>

18 U.S.C. §  1956(a)(1)(B)(i)
(Money Laundering)

THE GRAND JURY FURTHER CHARGES:

103.  The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations contained in Counts 1 through 29 of this Indictment.

104.  On or about September 23, 2004, in the Middle District of Pennsylvania and elsewhere, the defendants,

MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR.,

each aiding and abetting the other and each aided and abetted by the other and by other persons known and unknown, did knowingly conduct, attempt to conduct and did cause to be conducted a financial transaction affecting interstate commerce, to wit, a wire transfer in the amount of $100,000 sent from an account of Vision Holdings, Inc. to an account of the Pinnacle Group of Jupiter LLC, which involved the proceeds of a specified unlawful activity, that is, honest services wire fraud, in violation of 18 U.S.C. §§ 1343 and 1346, extortion under color of official right, in violation of 18 U.S.C. §1951, and bribery, in violation of 18 Pa.C.S. § 4701(a)(3), knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the

58

property involved in the financial transaction, that is, funds in the amount of $100,000, represented the proceeds of some form of unlawful activity.

In violation of Title 18, United States Code, §§ 1956(a)(1)(B)(i) and 2.

Counts 31-38

18 U.S.C. § 1951
(Extortion Under Color of Official Right)

THE GRAND JURY FURTHER CHARGES:

105.   The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations contained in Counts 1 through 30 of this Indictment.

106.   On multiple occasions between on or about January 1, 2002, and on or about January 1, 2007, in the Middle District of Pennsylvania, and elsewhere, the defendants,

MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR.,

each aiding and abetting the other and each aided and abetted by the other and by other persons known and unknown, did knowingly, intentionally and willfully obstruct, delay and affect, and attempt to obstruct, delay and affect, commerce and the movement of any article and commodity in commerce by extortion, as those terms are defined by 18 U.S.C. §§ 1951(b)(2) and 1951(b)(3), that is: soliciting, demanding, and accepting property, that is, payments in cash, check and wire transfer from PARTICIPANT #1, with his consent, induced by wrongful use of fear and under color of official right.

Each of the following payments, which occurred on or about the dates indicated, constitutes a separate count of this Indictment:

| Count | Date | Payment From | Amount and Type of Payment |
|---|---|---|---|
| 31 | 2-15-2004–2-24-2004 | Vision Holdings, Inc. | $200,000 (total of three checks) |
| 32 | 4-30-2004 | Vision Holdings, Inc. | $100,000 (total of two checks) |
| 33 | 7-12-2004 | Vision Holdings, Inc. | $120,000 Wire Transfer |
| 34 | 9-23-2004 | Vision Holdings, Inc. | $100,000 Wire Transfer |
| 35 | 8-16-06 | Robert Powell | $42,000 Cash |
| 36 | 11-1-06 | Robert Powell | $20,000 Cash |
| 37 | 11-20-06 | Robert Powell | $50,000 Cash |
| 38 | 12-18-06 | Robert Powell | $31,500 Cash |

In violation of Title 18, United States Code, §§ 1951 and 2.

<u>Count 39</u>

18 U.S.C. § 371
(Conspiracy to Defraud the United States)

THE GRAND JURY FURTHER CHARGES:

107.   The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations contained in Counts 1 through 38 of this Indictment.

108.   Between on or about January 1, 2002, and on or about May 21, 2007, in the Middle District of Pennsylvania, and elsewhere, the defendants,

MICHAEL T. CONAHAN and
MARK A. CIAVARELLA, JR.,

did knowingly, intentionally and willfully combine, conspire, confederate, and agree together with one another, and together with other persons known and unknown to the Grand Jury, to defraud the United States by impeding, impairing, obstructing and defeating the lawful Government functions of the Internal Revenue Service of the Treasury Department in the ascertainment, computation, assessment and collection of the revenue, to wit, income taxes.

<u>OVERT ACTS</u>

109.   In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts, among others, were committed in the Middle District of Pennsylvania and elsewhere:

1.   On or about January 21, 2003, the defendants caused PARTICIPANT #2 to wire transfer $610,000 to the bank account of an attorney;

2.  On or about January 28, 2003, the defendants caused an attorney in Schuylkill County, Pennsylvania to wire transfer $610,000 to an account of Beverage Marketing of Pennsylvania, Inc.;

3.  On or about January 28, 2003, the defendant MICHAEL T. CONAHAN caused $330,000 to be wire transferred from a bank account of Beverage Marketing of Pennsylvania, Inc. to a bank account under the control of the defendant MARK A. CIAVARELLA, JR.;

4.  On or about April 30, 2003, the defendant MICHAEL T. CONAHAN caused $75,000 to be wire transferred from a bank account of Beverage Marketing of Pennsylvania, Inc. to a bank account under the control of the defendant MARK A. CIAVARELLA, JR.;

5.  On or about July 15, 2003, the defendant MICHAEL T. CONAHAN caused $75,000 to be wire transferred from a bank account of Beverage Marketing of Pennsylvania, Inc. to a bank account under the control of the defendant MARK A. CIAVARELLA, JR.;

6. On or about August 13, 2003, the defendant MICHAEL T. CONAHAN directed that $25,000 be wire transferred to a bank account under the control of a third party;

7.  On or about August 20, 2003, the defendant MICHAEL T. CONAHAN directed that $105,000 be transferred to a bank account under the control of the defendant MICHAEL T. CONAHAN;

8.  On or about August 29, 2003, the defendant MICHAEL T. CONAHAN caused a check in the amount of $326,000 to be deposited into a bank account maintained in the name of the wife of

defendant MICHAEL T. CONAHAN;

9.   On or about January 20, 2004, the defendants caused $18,000 to be deposited in a bank account of the Pinnacle Group of Jupiter, LLC and falsely characterized the deposit in the records of the Pinnacle Group of Jupiter, LLC as "Rent Prepay";

10.   On or about January 20, 2004, the defendants caused $52,000.00 to be deposited in a bank account of the Pinnacle Group of Jupiter, LLC and falsely characterized the deposit in the records of the Pinnacle Group of Jupiter, LLC as "Rent Marine Prepay";

11.   On or about February 24, 2004, the defendants caused $47,000 to be deposited into a bank account of the Pinnacle Group of Jupiter, LLC and falsely characterized the deposit in the records of the Pinnacle Group of Jupiter, LLC "Slip Rental Fees";

12.   On or about February 24, 2004, the defendants caused $78,000 to be deposited into a bank account of the Pinnacle Group of Jupiter, LLC and falsely characterized the deposit in the records of the Pinnacle Group of Jupiter, LLC as "Reserving lease";

13.   On or about February 24, 2004, the defendants caused $75,000 to be deposited into a bank account of the Pinnacle Group of Jupiter, LLC and falsely characterized the deposit in the records of the Pinnacle Group of Jupiter, LLC as "Rental Feb, Mar, Apr";

14.   On or about May 3, 2004, the defendants caused $75,000 to be deposited into a bank account of the Pinnacle Group of

Jupiter, LLC and falsely characterized the deposit in the records
of the Pinnacle Group of Jupiter, LLC as "Lease Expenses April
May June";

     15.  On or about May 3, 2004, the defendants caused $25,000
to be deposited into a bank account of the Pinnacle Group of
Jupiter, LLC and falsely characterized the deposit in the records
of the Pinnacle Group, LLC as "Dock Expenses Related April May
June";

     16.  On or about July 12, 2004, the defendants caused
$120,000 to be wire transferred to a bank account of the Pinnacle
Group of Jupiter, LLC;

     17.  On or about September 23, 2004, the defendants caused
$100,000 to be wire transferred to a bank account of the Pinnacle
Group of Jupiter, LLC;

     18.  On or about July 15, 2005, the defendants caused
$1,000,000 to be wire transferred to a bank account of the
Pinnacle Group of Jupiter, LLC;

     19.  On or about February 3, 2006, the defendants caused
$150,000 to be wire transferred to a bank account of the Pinnacle
Group of Jupiter, LLC;

     20.  On or about August 16, 2006, the defendant MICHAEL T.
CONAHAN accepted a cash payment of $42,000;

     21.  On or about November 1, 2006, the defendant MICHAEL T.
CONAHAN accepted a cash payment of $20,000;

     22.  On or about November 20, 2006, the defendant MICHAEL T.
CONAHAN accepted a cash payment of $50,000;

23.   On or about December 18, 2006, the defendant MICHAEL T. CONAHAN accepted a cash payment of $31,500;

24.   As further overt acts, the Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the preceding and succeeding counts of this Indictment.  Each count constitutes a separate overt act in furtherance of the conspiracy.

In violation of Title 18, United States Code, §371.

<u>Count 40</u>

26 U.S.C. § 7206(1)
(Subscribing and Filing a Materially False Tax Return)

THE GRAND JURY FURTHER CHARGES:

110.  The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations contained in Counts 1 through 39 of this Indictment.

111.  On or about April 15, 2004, in the Middle District of Pennsylvania and elsewhere, the defendant,

MICHAEL T. CONAHAN,

a resident of Mountaintop, Luzerne County, Pennsylvania, did willfully make and subscribe, and did cause to be made and subscribed, an IRS Form 1040, which was verified by a written declaration that it was made under the penalties of perjury, and which he did not believe to be true and correct as to every material matter.  That IRS Form 1040, which was prepared and signed in the Middle District of Pennsylvania and was filed with the Internal Revenue Service, reported the defendant's taxable income for the year 2003 to be $230,671.00, whereas, as he then and there knew and believed, the defendant's actual taxable income for the year 2003 was materially more than that amount.

In violation of Title 26, United States Code, § 7206(1).

Count 41

26 U.S.C. § 7206(1)
(Subscribing and Filing a Materially False Tax Return)

THE GRAND JURY FURTHER CHARGES:

112.   The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations contained in Counts 1 through 40 of this Indictment.

113.   On or about April 15, 2005, in the Middle District of Pennsylvania and elsewhere, the defendant,

MICHAEL T. CONAHAN,

a resident of Mountaintop, Luzerne County, Pennsylvania, did willfully make and subscribe, and did cause to be made and subscribed, an IRS Form 1040, which was verified by a written declaration that it was made under the penalties of perjury, and which he did not believe to be true and correct as to every material matter.   That IRS Form 1040, which was prepared and signed in the Middle District of Pennsylvania and was filed with the Internal Revenue Service, reported the defendant's taxable income for the year 2004 to be $437,300.00, whereas, as he then and there knew and believed, the defendant's actual taxable income for the year 2004 was materially more than that amount.

In violation of Title 26, United States Code, § 7206(1).

<u>Count 42</u>

26 U.S.C. § 7206(1)
(Subscribing and Filing a Materially False Tax Return)

THE GRAND JURY FURTHER CHARGES:

114.   The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations contained in Counts 1 through 41 of this Indictment.

115.   On or about April 15, 2006, in the Middle District of Pennsylvania and elsewhere, the defendant,

MICHAEL T. CONAHAN,

a resident of Mountaintop, Luzerne County, Pennsylvania, did willfully make and subscribe, and did cause to be made and subscribed, an IRS Form 1040, which was verified by a written declaration that it was made under the penalties of perjury, and which he did not believe to be true and correct as to every material matter.   That IRS Form 1040, which was prepared and signed in the Middle District of Pennsylvania and was filed with the Internal Revenue Service, reported the defendant's taxable income for the year 2005 to be $889,148.00, whereas, as he then and there knew and believed, the defendant's actual taxable income for the year 2005 was materially more than that amount.

In violation of Title 26, United States Code, § 7206(1).

## Count 43

### 26 U.S.C. § 7206(1)
### (Subscribing and Filing a Materially False Tax Return)

THE GRAND JURY FURTHER CHARGES:

116.   The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations contained in Counts 1 through 42 of this Indictment.

117.   On or about May 21, 2007, in the Middle District of Pennsylvania and elsewhere, the defendant,

### MICHAEL T. CONAHAN,

a resident of Mountaintop, Luzerne County, Pennsylvania, did willfully make and subscribe, and did cause to be made and subscribed, an IRS Form 1040X, which was verified by a written declaration that it was made under the penalties of perjury, and which he did not believe to be true and correct as to every material matter.   That IRS Form 1040X, which was prepared and signed in the Middle District of Pennsylvania and was filed with the Internal Revenue Service, reported the defendant's taxable income for the year 2006 to be $273,119, whereas, as he then and there knew and believed, the defendant's actual taxable income for the year 2006 was materially more than that amount.

In violation of Title 26, United States Code, § 7206(1).

## Count 44

26 U.S.C. § 7206(1)
(Subscribing and Filing a Materially False Tax Return)

THE GRAND JURY FURTHER CHARGES:

118.  The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations contained in Counts 1 through 43 of this Indictment.

119.  On or about April 15, 2004, in the Middle District of Pennsylvania and elsewhere, the defendant,

MARK A. CIAVARELLA, JR.,

a resident of Mountaintop, Luzerne County, Pennsylvania, did willfully make and subscribe, and did cause to be made and subscribed, an IRS Form 1040, which was verified by a written declaration that it was made under the penalties of perjury, and which he did not believe to be true and correct as to every material matter.  That IRS Form 1040, which was prepared and signed in the Middle District of Pennsylvania and was filed with the Internal Revenue Service, reported the defendant's taxable income for the year 2003 to be $56,025.00, whereas, as he then and there knew and believed, the defendant's actual taxable income for the year 2003 was materially more than that amount.

In violation of Title 26, United States Code, § 7206(1).

## Count 45

### 26 U.S.C. § 7206(1)
### (Subscribing and Filing a Materially False Tax Return)

THE GRAND JURY FURTHER CHARGES:

120.   The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations contained in Counts 1 through 44 of this Indictment.

121.   On or about April 15, 2005, in the Middle District of Pennsylvania and elsewhere, the defendant,

MARK A. CIAVARELLA, JR.,

a resident of Mountaintop, Luzerne County, Pennsylvania, did willfully make and subscribe, and did cause to be made and subscribed, an IRS Form 1040, which was verified by a written declaration that it was made under the penalties of perjury, and which he did not believe to be true and correct as to every material matter.  That IRS Form 1040, which was prepared and signed in the Middle District of Pennsylvania and was filed with the Internal Revenue Service, reported the defendant's taxable income for the year 2004 to be $319,496.00, whereas, as he then and there knew and believed, the defendant's actual taxable income for the year 2004 was materially more than that amount.

In violation of Title 26, United States Code, § 7206(1).

<u>Count 46</u>

26 U.S.C. § 7206(1)
(Subscribing and Filing a Materially False Tax Return)

THE GRAND JURY FURTHER CHARGES:

122.   The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations contained in Counts 1 through 45 of this Indictment.

123.   On or about April 15, 2006, in the Middle District of Pennsylvania and elsewhere, the defendant,

MARK A. CIAVARELLA, JR.,

a resident of Mountaintop, Luzerne County, Pennsylvania, did willfully make and subscribe, and did cause to be made and subscribed, an IRS Form 1040, which was verified by a written declaration that it was made under the penalties of perjury, and which he did not believe to be true and correct as to every material matter.  That IRS Form 1040, which was prepared and signed in the Middle District of Pennsylvania and was filed with the Internal Revenue Service, reported the defendant's taxable income for the year 2005 to be $496,639.00, whereas, as he then and there knew and believed, the defendant's actual taxable income for the year 2005 was materially more than that amount.

In violation of Title 26, United States Code, § 7206(1).

<u>Count 47</u>

26 U.S.C. § 7206(1)
(Subscribing and Filing a Materially False Tax Return)

THE GRAND JURY FURTHER CHARGES:

124.   The Grand Jury hereby incorporates by reference, as though fully set forth herein, each of the allegations contained in Counts 1 through 46 of this Indictment.

125.   On or about April 15, 2007, in the Middle District of Pennsylvania and elsewhere, the defendant,

MARK A. CIAVARELLA, JR.,

a resident of Mountaintop, Luzerne County, Pennsylvania, did willfully make and subscribe, and did cause to be made and subscribed, an IRS Form 1040, which was verified by a written declaration that it was made under the penalties of perjury, and which he did not believe to be true and correct as to every material matter.  That IRS Form 1040, which was prepared and signed in the Middle District of Pennsylvania and was filed with the Internal Revenue Service, reported the defendant's taxable income for the year 2006 to be $72,171.00, whereas, as he then and there knew and believed, the defendant's actual taxable income for the year 2006 was materially more than that amount.

In violation of Title 26, United States Code, § 7206(1).

<u>Count 48</u>

18 U.S.C. §§ 982 and 1963
(Forfeiture)

THE GRAND JURY FURTHER CHARGES:

<u>RICO FORFEITURE</u>

126.   The Grand Jury hereby incorporates by reference, as
though fully set forth herein, each of the allegations contained
in Counts 1 through 47 of this Indictment for the purpose of
alleging forfeiture to the United States of America pursuant to
the provisions of Title 18, United States Code, § 1963, and Title
28, United States Code, Section 2461(c).   Pursuant to Rule 32.2,
Federal Rules of Criminal Procedure, notice is hereby given to
the defendants that the United States will seek forfeiture as
part of any sentence, in accordance with Title 18, United States
Code, § 1963, in the event of any defendant's conviction under
Count 1 and Count 2 of this Indictment.

127.   As a result of the offenses alleged in Count 1 and
Count 2 of this Indictment, the defendants MICHAEL T. CONAHAN and
MARK A. CIAVARELLA, JR. shall forfeit to the United States all
property, real and personal, involved in the aforestated
offenses, and all property traceable to such property, including
but not limited to:

      a.    all interests acquired and maintained in violation of
           Title 18, United States Code, Section 1962;

      b.    all interests in, securities of, claims against, and
           property and contractual rights of any kind affording a
           source of influence over, the enterprise named and
           described herein which the defendants MICHAEL T.
           CONAHAN and MARK A. CIAVARELLA, JR. established,
           operated, controlled, conducted, and participated in

the conduct of, in violation of Title 18, United States
Code, Section 1962.

c.   all property constituting or derived from any proceeds
which the defendants MICHAEL T. CONAHAN and MARK A.
CIAVARELLA, JR. obtained, directly or indirectly, from
racketeering activity in violation of Title 18, United
States Code, § 1962.

The property subject to forfeiture to the United States

pursuant to Title 18, United States Code, Section 1963(a)(1),

(a)(2) and (a)(3), includes, but is not limited to, the following

assets:

United States currency in the amount of at least
$2,819,500 and all interest and proceeds traceable
thereto, in that such sum in the aggregate is property
which was involved in the aforestated offenses or is
traceable to such property, in violation of Title 18,
United States Code, § 1962.

FRAUD AND MONEY LAUNDERING FORFEITURE

128.   The Grand Jury hereby incorporates by reference, as

though fully set forth herein, each of the allegations contained

in Counts 1 through 47 of this Indictment for the purpose of

alleging forfeiture to the United States of America pursuant to

the provisions of Title 18, United States Code, § 982.   Pursuant

to Rule 32.2, Federal Rules of Criminal Procedure, notice is

hereby given to the defendants that the United States will seek

forfeiture as part of any sentence, in accordance with Title 18,

United States Code, § 982, in the event of any defendant's

conviction under Counts 3 through 14 and 25 through 30 of this

Indictment.

129.   As a result of the offenses alleged in Counts 3

through 14 and 25 through 30 of this Indictment, the defendants

MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. shall forfeit to the United States all property, real and personal, involved in the aforestated offenses, and all property traceable to such property, including but not limited to:

    a.    Any property constituting or derived from any proceeds which the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. obtained, directly or indirectly, from wire fraud, mail fraud and money laundering violations;

    b.    Any property of the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. used and intended to be used, in any manner or part, to commit, or to facilitate the commission of money laundering violations;

    c.    United States currency in the amount of $2,819,500 and all interest and proceeds traceable thereto, in that such sum in the aggregate is property which was involved in the aforestated offenses or is traceable to such property, in violation of Title 18, United States Code, §§ 1341, 1343, and 1956.

### FORFEITURE OF SUBSTITUTE ASSETS

130.  If any of the property described in this Count of the Indictment, as being subject to forfeiture, as a result of any action or omission of the defendants,

    a.    Cannot be located upon the exercise of due diligence;

    b.    Has been transferred or sold to, or deposited with a third person;

    c.    Has been placed beyond the jurisdiction of the Court;

    d.    Has been substantially diminished in value; or

    e.    Has been commingled with other property which cannot be subdivided without difficulty;

It is the intent of the United States, pursuant to Title 18, United States Code, Sections 982 and 1963, and Title 21, United States Code, § 853(p), as incorporated by Title 18, United States Code, § 982(b)(1) and 28 U.S.C. § 2461(c), to seek the forfeiture

of any substitute property up to the value of the above
forfeitable property.

The defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA,
JR. are jointly and severally liable for the forfeiture
allegations contained above.


All pursuant to Title 18, United States Code, §§ 982 and
1963; Title 28, United States Code, Section 2461(c); and, Rule
32.2, Federal Rules of Criminal Procedure.



DENNIS C. PFANNENSCHMIDT
UNITED STATES ATTORNEY