UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | NO. 3:CR-09-000272 |
| vs. | : | |
| | : | |
| MICHAEL T. CONAHAN and | : | (JUDGE KOSIK) |
| MARK A. CIAVARELLA, JR. | | |

**BRIEF OF MARK A. CIAVARELLA, JR.**
**IN SUPPORT OF**
**MOTION FOR DISQUALIFICATION**

## I.  PROCEDURAL HISTORY OF THE CASE

On January 26, 2009, Ciavarella and Conahan waived Indictment by Grand
Jury, and the government filed a two count Information charging them with Honest
Services Wire Fraud under 18 U.S.C. 1343, 1346 and Conspiracy to defraud the
United States in violation of 18 U.S.C. 371 (Documents #1, 25).  On the same date,
Ciavarella and Conahan, pursuant to the terms of a plea agreement providing for an
87 month sentence, entered  conditional pleas of guilty. (Document# 3, 5).

The Honest Services Fraud Count, to which Ciavarella and Conahan pled
guilty, alleges that they, as state court judges, took discretionary action that they
knew would directly benefit a financial interest that they concealed in violation of
state law.

1

This court accepted the conditional pleas of guilty and ordered a pre-sentence investigation report.

After having received the pre-sentence report and pre-sentence statements of Ciavarella and Conahan, this court filed a Memorandum and Order on July 31, 2009, rejecting the plea agreements entered into between the government and them. (Document #39).

Thereafter, the Court rejected defendants' motion for reconsideration of its July 31, 2009 order (Document #43). The defendants ultimately withdrew their pleas of guilty and entered pleas of not guilty to the Information. (Document #44, 45).

On September 9, 2009, the government then filed a 48 count Indictment against the defendants. The defendants pled not guilty to the Indictment.

On March 1, 2010, Ciavarella and Conahan filed multiple pre-trial motions, including a Motion for Change of Venue based upon extensive prejudicial pre-trial publicity. Included amongst Ciavarella's motions is a Motion to Disqualify this Court.

## II.  STATEMENT OF FACTS

In its memorandum and order of July 31 rejecting defendants' plea agreement, this court acknowledged that it received and reviewed the pre-sentence reports and pre-sentence statements of the defendants.  Prior to rejecting the plea agreement,

the court also had the benefit of a sentencing recommendation from the probation office, which included the probation officer's ex-pate assessment and justification for his recommendations. This aspect of the report was an  for the court's eyes only. See, Document#43, at pages 2-3.  As to Ciavarella, this court particularly noted in its July 31 memorandum discussing the rejection of the plea agreement,

> "Ciavarella "has resorted to public statements of remorse, more for his personal circumstances, yet he continues to deny what he terms "quid pro quo" his receipt of money as a finder's fee, notwithstanding the Government's abundance of evidence of his routine deprivation of children's constitutional rights by commitments to private juvenile facilities he helped to create in return for a "finder's fee" in direct conflict of interest with his judicial roles. Such denials are self serving and abundantly contradicted by the evidence the Government proffers as offense conduct." (Document #39 at page 4).

The reasons for the court's rejection of Conahan's plea agreement is evident from its August 24, 2009 memorandum denying the motion for reconsideration of the plea agreement rejection. The court notes, in particular, that the probation officer's assessment and justification for his recommendations, served, in part,

> "for the basis of the court's conclusions concerning Conahan's declining to discuss his motivation behind his conduct, obstruction of justice, and failure to accept responsibility with his denials and contradiction of evidence. The probation recommendation characterized these failures by Conahan as based on his "scandalous conduct". The Defense claims that a defendant is not required to admit relevant conduct beyond the offense of conviction. The court generally agrees, but the defendant was expected  to admit relevant conduct related to the scandalous nature of the offense of conviction."

In a footnote to the August 24 memorandum, this court acknowledges the

inflammatory nature of referring to Conahan's conduct as "scandalous".

Neither the Information to which the defendants pled guilty nor the Statement to the Court by Government Counsel as part of the plea colloquy (Document # 17) allege that the charge of Honest Services Wire Fraud, to which the defendants originally pled guilty, is based upon a "quid pro quo". Rather, the documents clearly and unequivocally allege that the honest services charge is based upon a non-disclosure of a conflict of interest in violation of state law. Similarly, the government's Statement of Offense Conduct, submitted as part of the pre-sentence report, alleges as a Factual Predicate for the Honest Services Fraud the non-disclosure of a conflict of interest as required by state law. The Statement of Offense Conduct does not recite the terms "bribery" or express or implied "quid pro quo" as a factual predicate for the offense.

On August 2, 2009, two days after this court's rejection of the plea agreement, a news story appeared in the Citizens Voice, a daily newspaper of general circulation and on the newspaper's internet website. The story, written by reporter Michael Sisak, is titled,

### "Defiance doomed Ciavarella, Conahan's plea deals"

The story describes an impromptu contact between this court and Sisak near an elevator outside a courtroom after a plea hearing involving a government witness (Robert Powell). The story attributes this court with making several statements

reflecting upon Ciavarella's credibility and the strength of the government's case against Ciavarella. In particular, the news story states,

> "U.S. District Judge Edwin M. Kosik dissected the flawed logic of two disgraced former judges ...Kosik stood near an elevator outside his courtroom and casually discussed what had just happened therein, including an attempt by Powell's attorney to portray some payments to the judges as a "finders fee", not as an incentive for them to send a steady stream of juveniles to the detention facilities co-owned by Powell. How could there not have been a "quid pro quo?" Kosik wondered, portending the sentiments he expressed Friday in a five page memorandum rejecting plea agreements...The evidence of Ciavarella and Conahan's judicial prostitution-of their so-called kids-for-cash scheme-was abundant and clear, Kosik continued. The evidence of Powell's goals and those of the other kickbacker, developer Robert K. Mericle, was also clear, Kosik said-alluding to the pattern of facts established by federal prosecutors and juvenile advocates..." (See Document #50- Motion for Disqualification and Exhibit 1 attached thereto).

The court never disclosed the attributed remarks, as reported by Sisak, to the parties to this proceeding.  These remarks are the subject of Ciavarella's March 1, 2010 disqualification motion pending before this court for disposition.

Subsequent to the filing of the disqualification motion,  the Citizens Voice published a second news story on March 3, 2010. (See Exhibit 1 attached hereto) This story, written by Projects Editor Dave Janoski, and appearing on page 4 of the paper, is entitled,

**"Federal judge uncertain about conversation with reporter"**

and contains a picture of the presiding judge, Edwin M. Kosik.

The story indicates that one day after Ciavarella filed his disqualification motion, this court permitted itself to be interviewed by Janoski about the disqualification motion, and in fact, commented on the facts alleged in the motion. In particular, Janoski reports,

> "Judge Edwin M. Kosik said Tuesday he wouldn't deny having a conversation with a Citizen's Voice reporter that is the basis for the motion, but he couldn't remember it either.
>
> "I don't recall talking to him. I don't deny talking to him," Kosik said in a telephone interview. "But I don't make it a practice of discussing cases that appear before me."
>
> "I've been around so long, I'm not that stupid, said Kosik…"
>
> \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
> \*\*
> "Kosik said he was unaware of Sisak's story until reviewing pre-trial motions Tuesday morning and he was not sure that he knew Sisak…"
>
> "I didn't read the paper at the time," he said."

In responding to Janoski's reported inquiry as to whether this court would disqualify itself, the court is reported to have responded,

> "We'll sweat it out," Kosik said. "I will address the motions as soon as I have them…"
>
> "I don't engage in commenting on the details of a case. Any lawyer you know and any reporter you know would tell you that."

## III. STATEMENT OF QUESTIONS INVOLVED

Whether this court is subject to disqualification pursuant to 28 U.S.C. §455?

## IV.  ARGUMENT

Under 28 U.S.C. 455(a), "any justice, judge or magistrate of the United States shall disqualify  himself in any proceeding in which his impartiality might reasonably be questioned."  The test for recusal under section 455(a) requires an objective rather than subjective inquiry, namely, whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned. How the judge in question feels about his or her ability to rule without bias under the circumstances or whether the judge is not *actually* biased are factors of no consequence. *In re Kensington Intern, Ltd*. 353 F.3d 211 (3rd Cir. 2003); *In re Community Bank of Northern Virginia*, 418 F.3d 277 (3rd Cir. 2005).

Not only impartiality, but the appearance of impartiality are the "sine qua non of the American legal system."  The goal of section 455(a) is to avoid even the appearance of partiality. *Haines vs. Liggett Group, Inc*., 975 F.2d 81 (3rd Cir. 1992); *Nichols vs. Alley*, 71 F.3d 347, 351 (10th Cir. 1995) (quoting *Liljeberg vs. Health Services Acquisition Corp*., 486 U.S. 847 (1988)).

The balance tips in favor of disqualification if the question of

disqualification under section 455 (a) is a close one. *In re Boston's Children First*, 244 F.3d 164 (1st Cir., 2001); *In re Beard*, 811 F.2d 818 (4th Cir. 1987).

Under section 455(a), this court must initially determine whether a reasonable **factual** basis exists for calling its impartiality into question. *United States vs. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993). This section is silent, however, on whether the judge, who is the subject of the disqualification motion, should preside over the motion if he or she disputes the **factual** basis of the motion  or whether the motion should be transferred to another judge. Ciavarella asserts that the motion should be assigned to another judge for an evidentiary hearing if this court disputes the **factual** basis for the motion.  *See e.g. Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. at 851 (where the Supreme Court noted that the trial judge had denied a motion to vacate a judgment on the grounds that he was disqualified, and the Fifth Circuit reversed and remanded the matter to a different trial judge for factual findings pertaining to the disqualification); *Potashnick v. Port City Constr. Co.,* 609 F.2d 1101, 1106 (5th Cir.1980) (where the court noted that a previously remanded motion to disqualify was heard by a different district judge) *cert. denied,* 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980); *NEC Corp. v. Intel Corp.,* 654 F.Supp. 1256 (N.D.Cal.1987) (where the motion for disqualification was assigned to another district judge after having been referred to the court's assignment committee") *vacated per curiam as moot,*

F.2d 1546 (9th Cir.1988).

The Seventh Circuit noted the difficulty of applying § 455(a) when the judge must apply the standard *both* as its interpreter and as its object in *SCA Services, Inc. v. Morgan,* 557 F.2d 110, 116 (7th Cir.1977). Commentators argue that the better procedure is to transfer a motion to disqualify under § 455 to another judge. Bloom, *Judicial Bias and Financial Interest as Grounds for Disqualification of Federal Judges,* 35 Case W.Res.L.Rev. 662, 697 (1985); Comment, *Disqualification of Federal District Court Judges for Bias or Prejudice: Problems, Problematic Proposals and a Proposed Procedure,* 46 Alb.L.Rev. 229, 247 (1981); Comment, *Disqualification of Federal Court Judges for Bias or Prejudice,* 46 U.Chi.L.Rev. 236, 266 (1978). *See also* Note, *Disqualification of Judges for Bias in the Federal Courts,* 79 Harv.L.Rev. 1435, 1439 (1966). But see, *Steering Comm. vs. Mead Corp*., 614 F.ed 958, 963 n.9 (5th Cir. 1980)(district court had initial responsibility to recuse self from case).

In this case, Ciavarella's motion for disqualification sets forth two reasonable factual basis for calling into question the appearance of this court's impartiality.

First, this court, in deciding whether to accept the plea agreement, acknowledges that it had access to and read the pre-sentence reports, which contains, among other things, the government's Statement of Offense Conduct. It

also was exposed to ex-parte recommendations and assessments by the Probation department describing "scandalous conduct" on Conahan's part. The court also appears to have reviewed certain public statements made by Ciavarella, which may be derived from extra-judicial sources. The accuracy of the statements, which the court attributes to Ciavarella, and the source thereof, cannot be gleaned from the presentence report.

There are no formal limitations on the content of presentence reports which oftentimes rest on hearsay,  contain inadmissible or factually disputed evidence or evidence that is not relevant to the charges. *Gregg vs. United States*, 394 U.S. 489, 492 (1969).

The court has been exposed to *ex parte* material from probation officers, presentence reports and possible other extrajudicial sources upon which it prejudged an issue bearing directly upon defendants' guilt, concluding that Ciavarella's public denials of a *quid pro quo* are "self serving and abundantly contradicted by the evidence that the government proffers as offense conduct". Having prejudged the strength of the government's case and Ciavarella's credibility on this issue, this court's impartiality to preside over a jury trial, in this sensational case, might now reasonably be questioned where the government's allegation of defendants "accepting *quid pro quo* bribes as part of a generalized agreement" (paragraph 81 of Indictment) will be seriously contested.

In instances where a proposed plea agreement is rejected after the court reviews a presentence report,  recusal of a trial judge from presiding at trial is not mandatory absent actual prejudice. However, courts are required to give serious consideration to recusal because of the possible prejudice that might result from disclosure of the report to the judge. In essence, the court balances the objective of preventing even the possibility of prejudice with administrative convenience and the prevention of delay by having a single judge preside over a defendant's court appearances. *United States vs. Frezzo*, 563 F. Supp. 592, 594-595 ((E.D. Pa. 1983); *U.S. vs. Bunch*, 730 F.2d 517, 519 (7th Cir. 1984).[1]  In this case, several factors weigh strongly in favor of recusal. First, this court has made a factual finding that Ciavarella's denial of the existence of a *quid pro quo* is less than credible given the strengths of the government's proffered evidence. Even though not sitting as fact-finder at trial, this  court's finding is directly related to the factual and legal issues to be decided at trial. Secondly, this court's exposure to ex parte recommendations and assessments of the probation department, which includes references to

_____

[1] Ciavarella contends that recusal is warranted under section 455(a). The Court in *Frezzo*, 563 F.Supp. at 593-594 suggests that this section is not applicable absent an allegation of prejudice from an extra-judicial source and that the principles of *Gregg vs. United States*, supra and *U.S. vs. Small*, 472 F.2d 818 (3rd Cir. 1972) provide the proper frame of reference for consideration of a recusal motion based upon a court's exposure to a presentence report. To the extent that an extra-judicial source is required for an analysis under section 455(a), Ciavarella has alleged that extra-judicial sources are  the "public statements" made by Ciavarella denying the existence of a *quid pro quo* and the interviews between this court, Sisak and Janoski.

Conahan's conduct as scandalous, fosters further prejudice. Third, this court's extrajudicial comments will significantly impact jury selection. Jurors exposed to publicity will be asked what they heard or read about the case to determine whether their exposure disqualifies them no matter how earnestly the juror proffers impartiality. *Mu' Min vs. Virginia*, 500 U.S. 415 (1991).  This court would then be forced to decide whether its own comments affected a juror's impartiality. Fourth, the transfer of the case at this time to another judge would not cause an undue delay in the proceedings. The court has yet to rule upon any pre-trial motions and a trial date has not been set.

In *U.S. vs. LeFrere*, 553 F.Supp. 133 (C.D. Ill., 1982), a federal district court, after refusing to accept a plea agreement upon review of a presentence report, exercised its discretion and recused itself from a trial of a defendant who was charged with threatening the life of the President of the United States. Recognizing that a recusal was not mandatory, the court, nevertheless,  gave serious consideration to recusal having seen the presentence report, and to avoid even the appearance of prejudice, determined that recusal was warranted. *Id*. at 135-136.

The second reason for recusal under section 455(a) rests upon the public extra-judicial statements made to the media and published in the August 2, 2009 Citizen's Voice newspaper. It is generally recognized that public comments that

bear specifically upon pending litigation is an activity that judges should

scrupulously avoid. *U.S. vs. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976); Code of

Judicial Conduct, Canon 3A(6). In this case, the comments attributed to this court

unmistakably convey a message reflecting its personal belief that these defendants

prostituted their judicial office by incarcerating children for money.[2]   There is

nothing ambiguous about the message for which a legitimate explanation can be

offered.  To a reasonable person, the message conveys a sense of loathing,

disrepute and guilt, all signs of partiality.

Judges have routinely been subject to recusal under section 455 where they

have made public comment on pending cases. See, *In re: Boston's Children First*,

244 F.3d 164 (1st Cir. 2001)(recusal necessary where trial judge defended her

rulings on standing and class certification in telephone interview with reporter, as

comments were open to misinterpretation to create appearance of partiality);

*Jackson vs. Microsoft*, 135 F.Supp. 2d 38, 40 (D.D.C. 2001)(judges interview with

reporter in which he denigrated Bill Gates and offered reasons for decision created

appearance that judge was not acting impartially); *U.S. vs. South Florida Water*

*Management District*, 290 F.Supp. 2d 1356 (S.D. Fla. 2003)(recusal warranted

---

[2] Ciavarella also asserts that these extra-judicial comments also warrant recusal under section 455(b)(1) which provides for disqualification where the judge has a personal bias or prejudice concerning a party. Referencing the defendants as "judicial prostitutes" evidences a personal bias.

where judge gave interviews with reporters and published comments demonstrated objective doubt as to judge's continued impartiality).

In *Haines vs. Liggett Group Inc*, 975 F.2d 81 (3rd Cir. 1992), the Court of Appeals found that the trial judge's opinion in a pre-trial ruling, reported in local newspapers, accusing tobacco firms of concealing smoking risks, created an appearance of impropriety warranting recusal. The court found that it could not vindicate the requirement of the appearance of impartiality despite the ultimate issue on whether tobacco firms concealed potential health hazards of smoking being decided by a jury. Similarly, this court's opinions in its pretrial ruling rejecting the plea agreement and its public extrajudicial statements, for the reasons as set forth, create an appearance of partiality which a jury cannot absolve.

The court's most recent comments, reported in the March 3, 2010 edition of the Citizen's Voice, raise additional concerns why a federal judge would accept a phone call from a reporter and discuss a pending recusal motion while at the same time telling the reporter that he does not comment on matters before him. The comments attributed to the court in this article, coupled with its picture, did nothing to promote public confidence in the integrity of the judiciary or serve the appearance of impartiality in a case which has garnered wide and extensive pre-trial publicity.

Members of the public might now reasonably question whether the press is

influencing this court's judgments. The reported conversations between this court,

Sisak and Janoski can be considered as evidence of extrajudicial sources having

influenced or having created a reasonable appearance of an influence on this court,

as such interviews are not monologues. See, *U.S. vs. South Florida Water*

*Management District*, 290 F.Supp. 2d at 1360.

   A disinterested observer fully informed of the facts would harbor significant

doubt as to this court's impartiality under the circumstances as set forth.

## V.  CONCLUSION

   This court should grant the motion for recusal, or in the alternative, refer the

matter to another judge for an evidentiary hearing on any disputed facts.

   /s/ Al Flora, Jr.   
      Al Flora, Jr.

   /s/William Ruzzo   
      William Ruzzo

   Counsel for Ciavarella