```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


    UNITED STATES OF AMERICA    :
                                :
                                :
         VS                     :
                                : NO. 09-CR-247
    ROBERT MERICLE              :



                      TRANSCRIPT OF PROCEEDINGS
                   OF ARRAIGNMENT AND GUILTY PLEA


    BEFORE:    HONORABLE EDWIN M. KOSIK
               United States District Judge


    DATE:      Wednesday, September 2, 2009


    PLACE:     United States District Court
               Middle District of Pennsylvania
               235 North Washington Avenue
               Scranton, Pa   18503



APPEARANCES:

For The Government:       GORDON ZUBROD, ESQ.
                              Assistant United States Attorney


For Defendant:            WILLIAM WINNING, ESQ.
                          PAUL J. WALKER, ESQ.



                      LAURA BOYANOWSKI, RPR
                      OFFICIAL COURT REPORTER
```

17

1  extensive amount of time both investigating and researching the
2  law in this area. Referral fees are a common place practice.
3  They are a legal practice in real estate and in the building
4  market. Fee splitting between the parties, for example,
5  between Judge Ciavarella and Mr. Powell, that kind of fee
6  splitting is also a common practice in the real estate
7  business. As the Court would know, if someone buys a house and
8  there is a -- there is a realtor representing one party, a
9  realtor representing the other, they split the fee which, is in
10 essence a finder's fee.
11            THE COURT: I don't know that, but go ahead.
12            MR. ZUBROD: All right. This is not a kickback or a
13 bribe in any sense. It is a common practice. It is not a
14 legal quid pro quo. It is a common practice between
15 businessmen in real estate transactions. Mr. Mericle simply
16 paid a finder' fee to the judges in accordance with standard
17 practice. To him, his payment of the fee was what he had done
18 hundreds of times before and was not related to the office that
19 the judges held or any decisions by the judges. He had
20 contracted with a private party, Mr. Powell, to build a
21 business -- a private business. The judges steered Mr. Powell
22 to Mr. Mericle because he can build the building cheaper than
23 anyone else. In fact, he was the lowest bidder. That is why
24 Mr. Powell chose him. Had Mr. Powell simply paid the finder's
25 fee and given the money to Robert Powell to distribute as

18

1  directed by Mr. Ciavarella, there would have been no
2  prosecution of Mr. Mericle. He had no knowledge of what
3  happened to the money once he gave it to Mr. Powell. He did
4  know that the money ultimately was going to go to Judge
5  Ciavarella and later found out it was going also to Judge
6  Conahan. The crime came when the Internal Revenue Service
7  approached Mr. Mericle and asked about the finder's fee.
8           Mr. Mericle failed to disclose to the I. R. S. that
9  he knew that the money was intended to be paid to Judge
10 Ciavarella. By the time he appeared in the grand jury, Mr.
11 Mericle was aware that the money was also going to Judge
12 Conahan, it was being split between them. Knowing that, Mr.
13 Mericle failed to disclose to the grand jury that he was aware
14 who the ultimate recipients of that money were. That failure
15 to disclose made him an accessory after the fact to the tax
16 fraud perpetrated by Judges Conahan and Ciavarella.
17          This is the basis for the misprision charge. He
18 failed to disclose what he knew when directly asked about it.
19 The United States Attorney as part of the plea has required Mr.
20 Mericle to pay every dime that he paid to Judges Conahan and
21 Ciavarella to be paid to the children of Luzerne County. That
22 was our idea. Regarding the convoluted nature of it, Mr.
23 Mericle will represent to the Court that he understood this to
24 be a fee splitting arrangement and that he did not know what
25 happened once the money left him. He filled out the papers.

19

1  He had them signed. He was directed to have the payment made
2  to Mr. Powell and it was Mr. Powell's responsibility, his
3  understanding was, to make the distribution.
4           THE COURT: What you're suggesting is that any
5  relationship Mr. Mericle had to the juvenile centers that were
6  constructed by him or his company was entirely different than
7  any relationship that may have existed between Mr. Powell and
8  the two judges that you were referring to; is that correct?
9           MR. ZUBROD: That's correct, Your Honor. In fact,
10 Mr. Powell was paying money and he understood it to be a quid
11 pro quo that he would not get juveniles anymore if he didn't
12 pay up the money. And he paid over $700,000 for that purpose.
13          THE COURT: I want to emphasize that distinction
14 because it's my recollection that in the case of the two judges
15 you represented that there was a quid pro quo between Mr.
16 Powell and between the judges. That is not the case in the --
17 in this instance; is that correct?
18          MR. ZUBROD: That's correct, Your Honor. There's no
19 quid pro quo.
20          THE COURT: Anything else?
21          MR. ZUBROD: No, sir.
22          THE COURT: Mr. Mericle, you heard counsel for the
23 government tell us what their evidence would be in this case if
24 this case went to trial. Of course, if it did go to trial, the
25 judge would have to give some instruction to the jury. But I

20

1  first ask you is what he tells us represent your role in the
2  offense that brings you here today?
3       THE DEFENDANT: Yes, Your Honor.
4  BY THE COURT:
5  Q.  Before we go any further, I should tell you because it can
6  certainly very important to a person like yourself that if we
7  accept your plea here and adjudge you guilty of a felony, you
8  stand to lose certain rights. You may lose the right to vote.
9  You may lose the right to hold public office. In all events,
10 you will lose the right to possess a weapon for any purpose
11 whatsoever in the future. Do you understand that?
12 A.  I do, Your Honor.
13 Q.  The Court would have to tell the jury that the charge in
14 this case is based on the statute -- crimes code statute passed
15 by the Congress of the United States and that these events did
16 occur as outlined by counsel for the government. And the thing
17 that distinguishes an innocent or negligent or even a foolish
18 act from a criminal act is what goes on in an individual's
19 head. So the government would have to prove that you did
20 conceal and failed to disclose and that you did so knowingly,
21 and sometimes that is difficult to prove except by any words
22 that are spoken by an individual or by the circumstances in
23 which this occurs.
24      And I can tell you that if the jury decided to believe the
25 government's evidence, they could conclude that the government