```
                                                                     1

          IN THE UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

 UNITED STATES OF AMERICA    :
                             :
                             :
                             :
     vs                      :      09-CR-272
                             :
                             :
                             :
 MARK A. CIAVARELLA          :
                             :
                             :


     BEFORE:       THE HONORABLE EDWIN M. KOSIK

     PLACE:        COURTROOM NO. 1

     PROCEEDINGS:  JURY TRIAL EXCERPT

     DATE:         TUESDAY, FEBRUARY 8, 2011




 APPEARANCES:

 For the United States:  GORDON ZUBROD, ESQ.
                         WILLIAM HOUSER, ESQ.
                         MICHAEL CONSIGLIO, ESQ.


 For the Defendant:      ALBERT FLORA, ESQ.
                         WILLIAM RUZZO, ESQ.
```

2

      ROBERT MERICLE, called as a witness, being duly
sworn, testified as follows:
DIRECT EXAMINATION
BY MR. CONSIGLIO:
Q.   Good afternoon, sir.
A.   Good afternoon.
Q.   Will you please state your name for the jury?
A.   Robert Mericle.
Q.   There is a microphone there.
A.   Robert Mericle.
Q.   And if you can speak loud and clear so the whole courtroom can hear you.  So, sir, where are you employed?
A.   Mericle Commercial Realty Services.
Q.   What is that business entity?
A.   A full service real estate development company.
Q.   And what is your position with respect to this business?
A.   I'm the president.
Q.   And did you start this business?
A.   Yes, I did.
Q.   When did you start this business?
A.   I started the business in 1985.
Q.   How many employees do you have approximately in this business?
A.   200 plus employees.
Q.   What type of business is this?

3

A. It is a real estate development company. We construct buildings. We own buildings, and we manage buildings.
Q. What type of buildings do you normally deal with?
A. Commercial buildings.
Q. And give the jury the flavor of the type of commercial buildings you normally construct. Just give us a couple of examples, please.
A. Warehouse buildings, distribution buildings, office buildings, medical office buildings.
Q. And you've been involved in this business since 1985?
A. That's correct.
Q. Do you know Mark Ciavarella?
A. Yes, I do.
Q. And can you identify him in the courtroom, please?
A. (Indicating).
    MR. FLORA: We will stipulate, Your Honor.
    THE COURT: All right. I don't think you need that. Go ahead.
BY MR. CONSIGLIO:
Q. How long have you known Mark Ciavarella?
A. I've known Mark Ciavarella since I was 16.
Q. Would you describe your relationship with Mark Ciavarella as a friendship?
A. Yes.
Q. And that friendship that dates back to your teenage years?

                                                                    4

1  A.    That's correct.
2  Q.    Did you also have a professional relationship with Mark
3  Ciavarella?
4  A.    Yes, I did.
5  Q.    What was that nature of that professional relationship?
6  A.    Mark was my attorney from the time I was 19 until about
7  1996.
8  Q.    Why did -- was he no longer your attorney in 1996?
9  A.    He became a Luzerne County judge.
10 Q.    And did he provide you legal representation with respect
11 to the business entities that you were involved with?
12 A.    Yes, he did.
13 Q.    Why are you testifying here today?
14 A.    Based upon a plea agreement that I signed with the
15 government.
16 Q.    And that guilty plea agreement is for what crime?
17 A.    Misprision of a felony.
18 Q.    And what have you entered a guilty plea to?
19 A.    Failure to report to the authorities the false tax filing
20 of another person.
21 Q.    What's the maximum punishment you face under this guilty
22 plea?
23 A.    Three years.
24 Q.    And the maximum fine?
25 A.    I believe $250,000 fine.

5

1  Q.   Are you required to make any special payments to the
2  community under this plea agreement?
3  A.   Yes, I am.
4  Q.   And what are the special payments that you have to make?
5  A.   There's a payment of approximately $2,150,000.
6  Q.   Who did you enter this guilty plea before?
7  A.   Before Judge Kosik.
8  Q.   And are you awaiting sentencing on that guilty plea?
9  A.   Yes, I am.
10 Q.   And your sentence date has not been determined as of yet;
11 is that correct?
12 A.   That is correct.
13 Q.   Under this guilty plea agreement, were you required to
14 cooperate fully and completely with the government?
15 A.   Yes, I was.
16 Q.   And that's under the original guilty plea agreement; is
17 that correct?
18 A.   That is correct.
19 Q.   Since your original guilty plea agreement, has there been
20 a motion filed with Judge Kosik to amend the terms of your
21 guilty plea agreement?
22 A.   Yes, there has.
23 Q.   Does the original guilty plea agreement make promises by
24 the government to make certain sentencing recommendations for a
25 more lenient sentence for you, Mr. Mericle?

                                                                6

1  A.    Yes, it does.
2  Q.    And in the motion now pending before Judge Kosik to amend
3  this guilty plea agreement, it -- it will change those
4  conditions thereby allowing the government to make
5  recommendations up to and including the maximum punishment
6  facing you under that charge of three years of incarceration?
7  A.    That is correct.
8  Q.    This guilty plea agreement was amended, and this motion
9  was filed because you failed to fully and completely cooperate
10 with the government; is that correct?
11 A.    That's correct.
12 Q.    When questioned by government officials you were asked
13 whether you had made cash payments to certain elected
14 officials; is that correct?
15 A.    That's correct.
16 Q.    And initially when interviewed by federal officers and
17 agents, you denied making any cash payments to government or
18 political -- or public officials; is that correct?
19 A.    That's correct.
20 Q.    Subsequently in your cooperation it was learned you didn't
21 and you disclosed that you had a payment to other public
22 officials and elected officials; is that correct?
23 A.    That's correct.
24 Q.    And as a result of this failure to disclose these payments
25 to other public officials is why your guilty plea agreement has

1  been amended and it's under consideration by this Court; is
2  that right?
3  A.    That's correct.
4  Q.    You've been involved in this business of real estate for
5  25 years?
6  A.    That's correct.
7  Q.    Can you describe for the jury what a finder's fee is?
8              THE COURT:  Before you get into that phase of your
9  presentation, we are closer to the hour of four.  We will
10 adjourn until tomorrow at 8:30.  Before we adjourn, please we
11 haven't adjourned why the -- ladies and gentlemen, we will be
12 going home now.  I think the weather is supposed to be better
13 tomorrow.  So if you can make it by 8:30, we can start by
14 quarter to nine.  Same rule applies.  If the weather changes,
15 we have a hour leeway.  Don't worry about it.  I don't want you
16 to be concerned being on time.  You'll be going home.  We heard
17 evidence today that you have not heard yesterday.  There's
18 voluminous news coverage of this case.  I can't speak to that
19 personally because I'm not privy to having been aware of it,
20 but I suspect that there is voluminous news coverage.  You will
21 be with members of your family.  You will be with friends.
22 It's only natural somebody may attempt to discuss this case
23 with you.  Please don't discuss it with anyone for fear that
24 somebody else's opinion might be communicated to you which
25 should not be communicated to you remembering ultimately the

8

only opinion we want in this case is your opinion at the appropriate time to do so.  It's impossible for you to do avoid the news coverage.  But if you are subjected to it, just ignore it.  I can't tell you anything else in order to fulfill your obligation.  It's there.  You're aware of it.  Put it aside because it doesn't belong in your head.  Other than that, I wish you a good evening, a safe trip home, safe trip back tomorrow morning.

1                    REPORTER'S CERTIFICATE

2

3     I, LAURA BOYANOWSKI, Official Court Reporter for the
4  United States District Court for the Middle District of
5  Pennsylvania, appointed pursuant to the provisions of Title 28,
6  United States Code, Section 753, do hereby certify that the
7  foregoing is a true and correct transcript of the
8  within-mentioned proceedings had in the above-mentioned and
9  numbered cause on the date or dates hereinbefore set forth; and
10 I do further certify that the foregoing transcript has been
11 prepared by me or under my supervision.

12

13

14                                    _____
                                       Laura Boyanowski, RMR
15                                     Official Court Reporter

16 REPORTED BY:

17     LAURA BOYANOWSKI, RMR
       Official Court Reporter
18     United States District Court
       Middle District of Pennsylvania
19     Scranton, PA  18503

20
         (The foregoing certificate of this transcript does not
21 apply to any reproduction of the same by any means unless under
   the direct control and/or supervision of the certifying
22 reporter.)

23

24

25