**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 3:09-CR-272** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **MARK A. CIAVARELLA, JR.,** | : | |
| | : | |
| **Defendant** | : | |

**<u>MEMORANDUM</u>**

Defendant Mark A. Ciavarella, Jr., is a former judge of the Court of

Common Pleas of Luzerne County, Pennsylvania.  In February 2011, a jury

found Ciavarella guilty of racketeering, racketeering conspiracy, honest-services

mail fraud, money-laundering conspiracy, conspiracy to defraud the United States,

and subscribing and filing a materially false tax return.  Ciavarella was sentenced

to 336 months' imprisonment.  In 2018, we vacated three of Ciavarella's convictions

pursuant to 28 U.S.C. § 2255 after concluding that he had been prejudiced by his

trial counsel's failure to raise a statute-of-limitations defense.  The parties now

dispute what relief, if any, Ciavarella is entitled to under Section 2255.

**I.    <u>Factual Background & Procedural History</u>**[1]

Ciavarella served as judge on the Luzerne County Court of Common Pleas

from 1996 through January of 2009.  <u>United States v. Ciavarella</u>, 716 F.3d 705, 713

(3d Cir. 2013).  During his tenure, Ciavarella served primarily on the Juvenile Court.

---

[1] The above narrative summarizes the factual and procedural background of
this case as derived from the record and the Third Circuit Court of Appeals' opinion
reviewing Ciavarella's convictions and sentence.  <u>See</u> <u>United States v. Ciavarella</u>,
716 F.3d 705 (3d Cir. 2013).

Id. Ciavarella was appointed President Judge in January of 2007, succeeding his former colleague and codefendant, Michael T. Conahan. Id. at 713-14. In late 2008, Ciavarella and Conahan were accused of receiving nearly $3 million in exchange for their respective roles in facilitating construction and ensuring continued operation of two private juvenile detention centers in the Commonwealth of Pennsylvania. Id. at 713. Two other key players—commercial builder Robert Mericle and local attorney and businessman Robert Powell—were also criminally charged. See United States v. Mericle, No. 3:09-CR-247, Doc. 1 (M.D. Pa. Aug. 13, 2009); United States v. Powell, No. 3:09-CR-189, Doc. 1 (M.D. Pa. June 6, 2009).

Prosecution of Ciavarella and Conahan began with the filing of a felony information charging honest-services wire fraud and conspiracy to defraud the United States. See United States v. Ciavarella, No. 3:09-CR-28, Doc. 1 (M.D. Pa. Jan. 26, 2009). Both defendants entered into Rule 11(c)(1)(C) plea agreements in which all parties stipulated to a binding sentencing recommendation of 87 months' imprisonment. See id., Docs. 3, 5. Following receipt and review of defendants' presentence reports, the late Judge Edwin M. Kosik rejected the plea agreements, concluding that the proposed sentences fell "well below" the Guidelines for the offenses charged. United States v. Conahan, No. 3:09-CR-28, 2009 WL 6032443, at *2-3 (M.D. Pa. July 31, 2009). Ciavarella and Conahan withdrew their guilty pleas.

On September 9, 2009, a grand jury returned a 48-count indictment against Ciavarella and Conahan. Defendants answered the indictment with a barrage of pretrial motions—44 in all. Shortly thereafter, Conahan agreed to plead guilty to

racketeering conspiracy.  Judge Kosik accepted Conahan's guilty plea on July 23, 2010.

Two months later, the grand jury returned a 39-count superseding indictment charging Ciavarella as follows:

- Count 1: racketeering, in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c), between approximately June of 2000 and January 1, 2007;

- Count 2: racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), from on or about December of 2001 to on or about the date of the superseding indictment;

- Counts 3 through 6: honest-services wire fraud, in violation of 18 U.S.C. §§ 1343 and 1346, for a scheme executed through wire transmissions on July 12, 2004; September 23, 2004; July 15, 2005; and February 3, 2006, respectively;

- Counts 7 through 10: honest-services mail fraud, in violation of 18 U.S.C. §§ 1341 and 1346, for a scheme executed through the mailing of materially false annual statements of financial interests to the Administrative Office of the Pennsylvania Courts in April 2004, March 2005, April 2006, and March 2007, respectively;

- Counts 11 through 20: corrupt receipt of a bribe or reward for official action concerning programs receiving federal funds, in violation of 18 U.S.C. § 666(a)(1)(B), for payments received between February 15 and February 24, 2004; on April 30, 2004; on July 12, 2004; on September 23, 2004; on July 15, 2005; on February 3, 2006; on August 16, 2006; on November 1, 2006; on November 20, 2006; and on December 18, 2006, respectively;

- Count 21: conspiracy to launder money, in violation of 18 U.S.C. § 1956(h), from on or about January 1, 2001, to on or about the date of the superseding indictment;

- Counts 22 through 26: money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), on or about January 20, 2004; February 24, 2004; May 3, 2004; July 12, 2004; and September 23, 2004;

- Counts 27 through 34: extortion, in violation of the Hobbs Act, 18 U.S.C. § 1951, for payments between February 15 and February 24, 2004; on April 30, 2004; on July 12, 2004; on September 23, 2004; on August 16, 2006; on November 1, 2006; on November 20, 2006; and on December 18, 2006, respectively;

- Count 35: conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, between on or about January 1, 2002, and May 21, 2007; and

- Counts 36 through 39: subscribing and filing a materially false tax return, in violation of 26 U.S.C. § 7206(1), on or about April 15, 2004; April 15, 2005; April 15, 2006; and April 15, 2007, respectively.

Count 1 alleged 13 separate acts of racketeering activity to support the racketeering charge. The superseding indictment also included a forfeiture notice. Ciavarella renewed his earlier pretrial motions and filed several additional motions to dismiss. Judge Kosik denied those motions in a memorandum and order dated December 15, 2010.

Ciavarella's trial commenced with jury selection on February 7, 2011. Evidence at trial established that Ciavarella and Conahan introduced Powell and Mericle to one another with the goal of constructing a private juvenile detention center in Luzerne County to replace a dilapidated county-run facility. See Ciavarella, 716 F.3d at 714. Powell and a business associate created Pennsylvania Child Care, LLC ("PACC"), to develop the center and hired Mericle's construction company to build it. Id. As part of a successful effort to thwart the county's plan to build its own facility, and in order to assist Powell in securing a bank loan, Ciavarella and Conahan executed a placement agreement between the county and PACC, guaranteeing placement of the county's juvenile offenders at PACC at a

4

contract price of $1.314 million per year.  Id.  In January 2003, as construction

neared completion, Mericle transferred a "referral fee" of $997,600 in three separate

payments to Ciavarella and Conahan in a series of wire transfers between various

conduits.  Id.

The jury heard evidence that Ciavarella, in his capacity as judge on the

Juvenile Court, "leveraged" his position "to place juvenile offenders with PACC"

to ensure the facility's continued success.  Id. at 715.  According to Powell's trial

testimony, both Ciavarella and Conahan believed they were entitled to join in that

success.  See id.  The judges directed Powell to transfer their perceived "share"

of the profits to Pinnacle Group of Jupiter, LLC ("Pinnacle"), a corporation they

formed with their wives and used to channel funds associated with PACC.  Id. at

714-15.  From January through September 2004, Powell made payments to Pinnacle

totaling $590,000.  Id. at 715.  He disguised the payments by labeling them as "rent"

for an uninhabitable condominium purchased by Pinnacle in Jupiter, Florida.  Id.

When Mericle and Powell decided to build a second juvenile detention

center, Western PA Child Care ("WPACC"), and to expand PACC, Ciavarella and

Conahan received two more "referral fees": $1 million in July 2005 for WPACC's

construction and $150,000 in February 2006 for PACC's expansion.  Id. at 714.

Powell distributed additional proceeds to the judges totaling $143,500 between

August and December 2006 by delivering "boxes filled with cash" to Conahan and

his judicial assistant.  Id. at 715.  Ciavarella admitted at trial that he falsified tax

returns to conceal his additional income from the Internal Revenue Service and

failed to report financial interests in PACC and WPACC to the Administrative

Office of the Pennsylvania Courts.  (See Doc. 235, 2/15/11 Trial Tr. 58:18-59:19, 69:7-72:2); see also Ciavarella, 716 F.3d at 714-15.  He denied that any payments were bribes, kickbacks, or the product of extortion (he "always considered that money to be a legal finder's fee"), (Doc. 235, 2/15/11 Trial Tr. 25:18-26:13; see also id. at 67:17-19; Doc. 232, 2/8/11 Trial Tr. 27:16-28:8, 31:25-45:21), and he denied any knowledge of the "rent" payments and the deliveries of cash, (see, e.g., Doc. 235, 2/15/11 Trial Tr. 29:6-32:12, 46:18-47:3, 64:4-6, 65:11-16, 66:3-7).

After seven days of evidence and two and a half days of deliberation, the jury convicted Ciavarella on 12 of 39 counts: racketeering (Count 1), racketeering conspiracy (Count 2), all four counts of honest-services mail fraud (Counts 7-10), money-laundering conspiracy (Count 21), conspiracy to defraud the United States (Count 35), and all four counts of subscribing and filing a materially false tax return (Counts 36-39).  The jury identified two acts of racketeering activity in support of its verdict on Count 1: Racketeering Act One, charging honest-services wire fraud for $997,600 in wire transfers on January 21, January 24, and January 28, 2003, and Racketeering Act Thirteen, charging money-laundering conspiracy.  Ciavarella filed several posttrial motions, all of which were denied.

The presentence report categorized Ciavarella's convictions into two groups under Guidelines Section 3D1.2.  (See PSR ¶ 60).  Counts 1, 2, 7, 8, 9, 10, and 21 were placed in Group One, because the Guidelines range for those counts was determined largely by the total loss amount, (id. ¶ 61), and Counts 35, 36, 37, 38, and 39 were placed in Group Two, because the range for those counts was determined largely by the amount of tax loss, (id. ¶ 62).  For Group One, the report correctly

applied the guideline for honest-services mail fraud (Section 2C1.1)—the highest

offense level of all counts in the group.  (Id. ¶ 64).  The report calculated an offense

level for Group One of 44, which included a base offense level of 14 under Section

2C1.1(a)(1) because Ciavarella was a public official, enhanced as follows:

- a two-level enhancement because the offense involved more than one bribe or extortion, pursuant to Section 2C1.1(b)(1);

- an 18-level enhancement because the offense involved a loss amount of $2,858,500, which was more than $2.5 million but less than $7 million, pursuant to Section 2C1.1(b)(2) and 2B1.1(b)(1)(J);

- a four-level enhancement because Ciavarella was an elected public official in a high-level decisionmaking position, pursuant to Section 2C1.1(b)(3);

- a two-level enhancement because the juvenile offenders were vulnerable victims, pursuant to Section 3A1.1(b)(1);

- a two-level enhancement because the offense involved a large number of vulnerable victims, pursuant to Section 3A1.1(b)(2); and

- a two-level enhancement for obstruction of justice, pursuant to Section 3C1.1.

(Id. ¶¶ 65-73).  Group Two had an adjusted offense level of 22, which included a base

offense level of 20 and a two-level enhancement because Ciavarella failed to report

more than $10,000 in income, pursuant to Section 2T1.1(b)(1).  (See id. ¶¶ 74, 75, 79).

Application of the multicount adjustment rules produced a total offense level of 44,

which was then reduced to 43—the maximum level contemplated by the Guidelines.

(Id. ¶¶ 85-89).  With a criminal history score of zero and a criminal history category

of I, Ciavarella's Guidelines sentence was life imprisonment.  (See id. ¶ 118).

Ciavarella raised multiple objections to the presentence report.  Relevant here, he objected to the loss amount of $2,858,500; to the enhancement for multiple bribes; and to the vulnerable-victim enhancements.  According to Ciavarella, the jury must have rejected Powell's testimony wholesale to acquit Ciavarella on the bribery and extortion counts, so the court could not give Powell's testimony any weight for purposes of sentencing.  (See Doc. 263, 7/20/11 Presentencing Conference Tr. 3:18-4:5, 4:23-5:11, 8:7-13, 17:9-18).  Judge Kosik disagreed, finding that "[t]here is a preponderance of evidence and reliability in Powell's testimony dealing with the acquitted counts, as well as[] the convicted Counts charging mail fraud, Counts Seven to Ten, and money laundering, in Count Twenty-one."  (Doc. 266 at 1-2).  Judge Kosik also overruled defense objections based on Skilling v. United States, 561 U.S. 358 (2010); to the obstruction-of-justice enhancement; and to the denial of an acceptance-of-responsibility reduction.  (See Doc. 266 at 1-2).

The case proceeded to sentencing on August 11, 2011.  Judge Kosik varied below the Guidelines sentence of life imprisonment to an aggregate sentence of 336 months' imprisonment.  The sentence consisted of 240 months on each of Counts 1, 2, 7, 8, 9, 10, and 21, to run concurrently with each other; 60 months on Count 35, to run consecutively to Counts 1, 2, 7, 8, 9, 10, and 21; and 36 months on Counts 36, 37, 38, and 39, to run concurrently with each other and consecutively to all other counts.  Judge Kosik ordered Ciavarella to pay restitution of $1,173,791.94 and to forfeit $997,600.

Ciavarella appealed his conviction and sentence, challenging, *inter alia*, the sufficiency of the evidence supporting Counts 1, 2, 7, 8, 9, 10, and 21; the timeliness

of his prosecution on Counts 1, 2, 7, and 21; and the court's consideration of acquitted conduct and Powell's testimony at sentencing.  See Ciavarella, 716 F.3d at 730-35.  The court of appeals first examined the sufficiency of the evidence.  The court concluded that the government had adduced ample evidence to support the jury's finding that the January 2003 payments of $997,600 constituted a bribe, sustaining the racketeering and conspiracy convictions.[2]  See id. at 730-31, 732.  The court further held that Ciavarella's failure to disclose the 2003 bribe on his financial disclosure statements in 2004, 2005, 2006, and 2007 supported the honest-services mail fraud convictions.  See id.

Turning to the statute-of-limitations issue, the court of appeals determined that trial counsel had waived a timeliness defense as to the racketeering and both conspiracy convictions by failing to raise it before or during trial.  See id. at 733 (quoting United States v. Karlin, 785 F.2d 90, 92-93 (3d Cir. 1986)).  The court agreed that Ciavarella "would have been entitled to an instruction on the applicable statute of limitations," but concluded that trial counsel's failure to preserve the issue for appeal barred the court from considering the defense.  Id.  As to the honest-services mail fraud charge at Count 7, however, the court found the limitations defense to be both properly preserved and valid.  Id.  The court vacated the conviction at Count 7 as barred by the statute of limitations but determined that de novo resentencing was not required because the vacated count "did not affect Ciavarella's total offense

---

[2] Reference to "the conspiracy convictions" herein includes the racketeering conspiracy and money-laundering conspiracy convictions only.  It does not include the unchallenged conviction for conspiracy to defraud the United States.

level, Guideline range, or sentence" and Ciavarella had otherwise received a

sentence below the Guidelines range.  See id. at 734-35.  Ciavarella's requests for *en*

*banc* and panel rehearing were denied, see United States v. Ciavarella, No. 11-3277

(3d Cir. July 24, 2013), and the Supreme Court of the United States denied

*certiorari*, see Ciavarella v. United States, 134 S. Ct. 1491 (2014) (mem.).

Ciavarella timely moved to vacate his convictions on the racketeering,

conspiracy, and honest-services mail fraud counts, claiming that his trial counsel

were ineffective in failing to mount a timeliness defense.  Following the Supreme

Court's decision in McDonnell v. United States, 579 U.S. ___, 136 S. Ct. 2355 (2016),

Ciavarella sought leave to amend his motion to also include a substantive challenge

to the honest-services mail fraud convictions.  The case was thereafter transferred

to the undersigned.  We appointed counsel, convened an evidentiary hearing, and

ordered supplemental briefing from the parties.

On January 8, 2018, we issued a memorandum opinion granting Ciavarella's

Section 2255 motion in part.  We determined that Ciavarella's trial counsel had been

ineffective in failing to raise a statute-of-limitations defense and that this failure

may have prejudiced Ciavarella at trial on the racketeering and conspiracy counts.

See United States v. Ciavarella, No. 3:09-CR-272, 2018 WL 317974, at *5-8 (M.D. Pa.

Jan. 8, 2018) (Conner, C.J.).  We found no similar prejudice on the honest-services

mail fraud counts, since the jury verdict established that the mailing central to each

offense occurred within the limitations period.  See id. at *7-8.  As for Ciavarella's

proposed McDonnell claim, we granted leave to amend but found the claim itself

to be procedurally defaulted.  See id. at *9-13.  Both parties appealed, the Third

Circuit affirmed, see United States v. Ciavarella, 765 F. App'x 855 (3d Cir. 2019)

(nonprecedential), and the Supreme Court denied *certiorari*, see Ciavarella

v. United States, 140 S. Ct. 282 (2019) (mem.).

We convened a telephonic conference with the parties on January 23, 2020, to

chart a course for further proceedings.  The government informed the court during

the conference that it did not intend to retry Ciavarella on the vacated counts.  The

parties also informed the court that they disagree as to whether resentencing on the

remaining counts is required or appropriate.  We issued a supplemental briefing

schedule, and the parties have fully briefed their respective positions.

## II.   Discussion

The only question remaining in this matter is whether resentencing

*de novo* is required or appropriate following *vacatur* of Ciavarella's racketeering

and conspiracy convictions.  The government asserts that resentencing *de novo* is

not authorized by Section 2255 and that, even if it is, Ciavarella's arguments are

foreclosed by the Third Circuit's decision on direct appeal, the sentencing package

doctrine, and the concurrent sentence doctrine.  Ciavarella rejoins that the vacated

counts drove his Guidelines range and that the court must resentence him *de novo*.

We begin with the argument that the relief sought is not cognizable under Section

2255.

### A.     Section 2255's "Custody" Requirement

Under Section 2255(a) of Title 28 of the United States Code, a federal

prisoner who is "in custody" and "claiming the right to be released" on the ground

that his sentence is unconstitutional may move the court to vacate, set aside, or

11

correct that sentence.  See 28 U.S.C. § 2255(a).  The government asserts that, because Ciavarella's 240-month sentence on the three vacated counts is running concurrently with an identical sentence on Ciavarella's remaining honest-services mail fraud convictions, he is not "claiming the right to be released" from "custody" and his Section 2255 motion is thus incognizable.  (Doc. 387 at 12; Doc. 395 at 7-9).

The government's argument rises and ultimately falls on its overbroad reading of the Third Circuit Court of Appeals' decision in United States v. Ross, 801 F.3d 374 (3d Cir. 2015).  After a jury trial, Edward Ross was sentenced to seven concurrent 10-year terms on Counts 1, 2, 3, 4, 5, 8, and 10, including a statutorily mandated 10-year minimum term on Count 5.  Id. at 376-77.  Ross also received a 30-year sentence on Count 7, mandated by statute to run consecutively to all other counts.  Id. at 377.  The Third Circuit affirmed Ross's convictions on direct appeal.  See id. (citing United States v. Ross, 323 F. App'x 117, 120 (3d Cir. 2009) (nonprecedential)).

Ross subsequently filed a Section 2255 motion challenging his conviction on Count 8 on ineffective-assistance-of-counsel grounds.  Id.  The district court found that Ross's conviction on Count 8 was likely unlawful but concluded that any error at trial did not prejudice Ross since, even if Count 8 were vacated, his 10-year sentence on that count was running concurrently with 10-year terms on six other counts.  See id. (citing Strickland v. Washington, 466 U.S. 668 (1984)).  The Third Circuit granted a certificate of appealability as to whether Ross's counsel had been ineffective and whether Ross was prejudiced as a result.  Id.

12

On appeal, Ross did not argue that Count 8 impacted his prison terms or his
Guidelines range or that a concurrent 10-year sentence could otherwise constitute
"custody" for purposes of Section 2255.  See Memorandum of Law in Support of
Application for Certificate of Appealability at 16-21, Ross, 801 F.3d 374 (No. 13-4447);
Appellant Edward Ross's Opening Brief at 21-31, Ross 801 F.3d 374 (No. 13-4447).
Indeed, Ross did not claim the right to be released, or to be released sooner.  See
generally Appellant Edward Ross's Opening Brief, *supra*, at 21-31.  Ross argued
only that certain noncustodial consequences of his conviction justified Section 2255
relief.  See id.  Specifically, he posited that the $100 special assessment on Count 8
and the collateral consequences and societal stigma of an unlawful conviction each
constituted "custody" as contemplated by Section 2255.  See id.; see also Ross, 801
F.3d at 379.

The court of appeals disagreed.  The court observed that it likely would have
vacated Ross's conviction and remanded for resentencing had the challenge been
raised on direct appeal.  See Ross, 801 F.3d at 378.  But, the court noted, Ross was
raising a collateral attack, so "the forms of relief remaining . . . are severely limited
by statute."  Id.  The court reiterated that Section 2255 relief is cognizable only for
"prisoners who claim the right to be released from 'custody.'"  Id. at 379.  It then
concluded that, while "many forms of restraint short of physical confinement" may
constitute "custody" for this purpose, see id. (citing Rumsfeld v. Padilla, 542 U.S.
426, 437 (2004)), a $100 special assessment is not so "severe" a restraint as to be
considered "custody," id. at 382.  The court did not decide whether societal stigma
or other collateral consequences render a person "in custody" under Section 2255,

observing only that, even if they did, Ross had not identified any such consequences flowing from the challenged count.  See id. at 382-83.  The court thus declined to consider the merits of Ross's motion since he was not "claiming the right to be released" from "custody."[3]  Id. at 378.

The government argues that Ross forecloses Section 2255 relief in this case because Ciavarella, like Ross, is serving concurrent sentences across several counts, some of which were vacated and some of which were not.  (See Doc. 387 at 12; Doc. 395 at 7-9).  The government interprets the Third Circuit's decision as reasoning that, "because [Ross's] term of imprisonment would not be impacted" by *vacatur* of the challenged count, Ross "was not 'claiming the right to be released' from 'custody.'"  (Doc. 395 at 8 (citing Ross, 801 F.3d at 378-79)).

But this is plainly not what Ross holds.  The decision does not speak to whether or when one of several concurrent prison terms might constitute "custody" under Section 2255.  That issue was not before the court, arguably because there was no claim for earlier release from prison to be made: Ross's 10-year sentence on Count 8 was running concurrently with a 10-year mandatory minimum sentence on another count (which was running consecutively to a 30-year mandatory minimum term on yet another count), so Ross could not have been released earlier regardless of what happened to the challenged count.  The only issue before the court was

---

[3] We note that Ross makes clear that the "custody" issue is a threshold inquiry that should have been raised by the government earlier in these Section 2255 proceedings, well prior to consideration of the merits of Ciavarella's ineffective-assistance claims.  See id. at 378-79.

whether the two *noncustodial* consequences identified by Ross could be considered "custody" for purposes of collateral relief.  <u>See</u> <u>Ross</u>, 801 F.3d at 379.

This case stands in stark contrast.  Unlike Ross, Ciavarella *is* claiming the right to earlier release from custody.  It is his view that the vacated counts significantly impacted his Guidelines imprisonment range and that resentencing *de novo* is required.  And, unlike Ross, Ciavarella is not serving a concurrent mandatory minimum term on a remaining count that would render his requested relief a statutory impossibility.

Simply put, our threshold inquiry is whether Ciavarella is "*claiming* the right to be released" from "custody"—not whether Ciavarella *has* the right to be released.  <u>See</u> 28 U.S.C. § 2255(a) (emphasis added); <u>see also</u> <u>Ross</u>, 801 F.3d at 379.  The answer is "yes."  Hence, Ciavarella's request to be resentenced *de novo* is cognizable under Section 2255.

## B.    The Sentencing Package Doctrine

We next consider whether resentencing is required by the "sentencing package doctrine."  The sentencing package doctrine, typically applied in the context of direct appeals, provides that district courts "should resentence *de novo* when an interdependent count of an aggregate sentence is vacated."  <u>Ciavarella</u>, 716 F.3d at 734 (citation omitted).  On direct appeal in this case, the Third Circuit explained that *de novo* resentencing is necessary in such situations because

> when a defendant is found guilty on a multicount indictment,
> there is a strong presumption that the district court will craft
> a disposition in which the sentences on the various counts
> form part of an overall plan.  When a conviction on one or
> more of the component counts is vacated, common sense

> dictates that the judge should be free to review the efficacy of
> what remains in light of the original plan, and to reconstruct
> the sentencing architecture upon remand . . . if that appears
> necessary to ensure that the punishment still fits both crime
> and criminal.

Id. (quoting United States v. Davis, 112 F.3d 118, 122 (3d Cir. 1997) (quoting United

States v. Pimienta-Redondo, 874 F.2d 9, 14 (1st Cir. 1989))).

The court of appeals cited two of its precedents to illustrate application of the

doctrine and, specifically, the meaning of the phrase "interdependent count." See

id. (citing United States v. Miller, 594 F.3d 172 (3d Cir. 2010); Davis, 112 F.3d 118).

In Miller, the Third Circuit vacated one of the defendant's two child-pornography

convictions on direct appeal on double-jeopardy grounds. See Miller, 594 F.3d at

176. The court of appeals agreed with the district court that resentencing on the

remaining count (possession) was required, noting that the two counts had been

grouped for sentencing purposes and the vacated count (receipt) had been used to

calculate the Guidelines range for the entire group. See id. at 181.

In Davis, the district court vacated the defendant's Section 924(c) firearm

conviction on collateral review. See Davis, 112 F.3d at 120. It then conducted a *de

novo* resentencing and applied—to the remaining drug counts—a two-level weapon

enhancement that had previously been barred by grouping of the later-vacated

firearm count. Id. This resulted in an increased Guidelines range and a higher

sentence on the drug counts, so the defendant appealed. The court of appeals

affirmed. It held that the district court was authorized to resentence *de novo* on the

undisturbed counts because the defendant's sentence "constituted an aggregate

sentence that was based upon the proven interdependence" between the remaining and vacated counts.  Id. at 122-23.

Ciavarella misapprehends certain language in Miller as holding that interdependence can be established by grouping alone.  (See Doc. 386 at 7 (citing Miller, 594 F.3d at 181-82; United States v. Murray, 144 F.3d 270, 273 n.4 (3d Cir. 1998))).  But if that were the court of appeals' understanding, it would have remanded for resentencing on direct appeal in this case.  The count vacated on appeal (Count 7) was grouped with then-remaining Counts 1, 2, 8, 9, 10, and 21, and the court of appeals acknowledged as much.  See Ciavarella, 716 F.3d at 734.  Even so, the court held that resentencing was not required because "the vacated count did not affect Ciavarella's total offense level, Guideline range, or sentence," and his sentence was below the Guidelines range in any event.  Id. at 735.  We view this holding, and in particular its discussion of Miller and Davis, to mean that grouping alone is not dispositive for purposes of the sentencing package doctrine; rather, there must be some obvious link between the vacated counts and the sentence on the counts that remain.

No such link is immediately apparent here.  The Guidelines range for Group One (which included the three vacated counts) was calculated using the honest-services mail fraud guideline because that guideline produced the highest offense

level.[4]  (See PSR ¶¶ 64-65).  Thus, this is not a situation like <u>Miller</u> where the

defendant's Guidelines range had been calculated using the guideline applicable to

a now-vacated count.  <u>Cf. Miller</u>, 594 F.3d at 181.  And unlike <u>Davis</u>, the parties have

not identified (and we are not aware of) any offense-level enhancement or reduction

previously barred by a racketeering or conspiracy conviction that would now be

available.  <u>Cf. Davis</u>, 112 F.3d at 122-23.  In sum, removing the vacated counts has

no obvious impact on Ciavarella's offense level, Guidelines range, or sentence.  <u>See</u>

<u>Ciavarella</u>, 716 F.3d at 735.

Ciavarella maintains that we must go a step further, beyond facial

application of the Guidelines, and consider how the vacated counts might have

impacted the relevant conduct considered for Group One.  (<u>See generally</u> Doc. 386

at 9-29).  Ciavarella posits that conduct underlying the vacated counts was the sole

support for three of the five sentencing enhancements applied to Group One, *viz.*,

the two-level enhancement for conduct involving more than one bribe or extortion,

the two-level enhancement because the offense involved vulnerable victims, and the

further two-level enhancement based on the number of vulnerable victims.  He also

contends that the loss amount of $2,858,500 was driven up by transactions of which

he had no knowledge and for which he cannot be held responsible absent the now-

vacated conspiracy convictions.  In other words, Ciavarella asks us to take a fresh

---

[4] The court of appeals' opinion states that, in Group One, "the money laundering conspiracy, Count 21, led to the highest offense level, and resulted in an adjusted offense level of 44." <u>Ciavarella</u>, 716 F.3d at 734-35.  Counsel for the government surmises that this statement likely resulted from trial counsel's filing of the original (rather than revised) presentence report with the court of appeals. (<u>See</u> Doc. 387 at 7 n.1).

look at the entire record, make new factual findings based on only that conduct attributable to his remaining convictions, and resentence accordingly.

As a threshold matter, we are not certain the court of appeals would take so broad a view of the sentencing package doctrine, especially on collateral review. See Ross, 801 F.3d at 378.  In a decision issued just a year after Davis, the court of appeals intimated that the doctrine applies only in situations where "the Guidelines *expressly* contemplate interdependent sentences."  Murray, 144 F.3d at 273 n.4 (emphasis added).  In Murray, the court identified Davis as a "clear example of interdependence," commenting that resentencing *de novo* was appropriate there because it was "evident that the particular guidelines themselves contemplate[d] an interdependent relationship."  Id. (citation and internal quotation marks omitted) (alteration in original).  And in Davis itself, the Third Circuit spoke to the "proven interdependence" between the drug and gun counts, suggesting that the sentencing package doctrine is concerned only with indisputable and objective correlations between what has been vacated and what remains.  See Davis, 112 F.3d at 123.

Such a boundary makes good sense given the "severely limited" nature of the Section 2255 remedy.  See Ross, 801 F.3d at 378.  It is consistent with the Third Circuit's decisions applying the sentencing package doctrine.  See Miller, 594 F.3d at 181; Davis, 112 F.3d at 122-23; see also Murray, 144 F.3d at 273 n.4.  And it draws

a clear line to assist courts in determining whether resentencing is required.[5]  By

contrast, Ciavarella's expansive interpretation of the doctrine is almost Kafkaesque

in its convolution: it would require us to conduct a hypothetical *de novo*

resentencing just to determine whether an actual *de novo* resentencing might be

required.  For all of these reasons, we hold that—based on the Third Circuit's

historical approach to the sentencing package doctrine and its application of that

doctrine on direct appeal—resentencing *de novo* is not required in this case.[6]

Even if we were to accept Ciavarella's invitation to look closer, we are

unconvinced that his Guidelines range would change.  Ciavarella's argument, at

its core, is that because his roster of convictions has narrowed, so too has the scope

of relevant conduct that the court could rely on in calculating his offense level and

Guidelines range.  But as the Third Circuit explained on direct appeal, acquitted

conduct can still be considered by a sentencing judge "so long as that conduct has

been proved by a preponderance of the evidence."  Ciavarella, 716 F.3d at 735-36

---

[5] This is particularly true here, where Ciavarella's sentence is already *below* the Guidelines range.  See Ciavarella, 716 F.3d at 735 (noting, in declining to order *de novo* resentencing, that Ciavarella received a below-Guidelines sentence).  It is unknowable whether or to what extent the Guidelines range played a role in Judge Kosik's sentencing determination.  Thus, it is even less clear in this case that the result would have been any different had Ciavarella never been convicted on Counts 1, 2, and 21.

[6] The government also invokes the "concurrent sentence doctrine," which, like the sentencing package doctrine, is applied most often on direct appeal.  The concurrent sentence doctrine provides that "courts are free to pretermit decision about convictions producing concurrent sentences, when the extra convictions do not have cumulative effects."  Ross, 801 F.3d at 381 (quoting Ryan v. United States, 688 F.3d 846, 849 (7th Cir. 2012)).  Application of the doctrine "is not jurisdictional, and is discretionary," Kendrick v. Dist. Attorney, 488 F.3d 217, 220 (3d Cir. 2007) (citation omitted), and we decline to apply it here.

(quoting <u>United States v. Watts</u>, 519 U.S. 148, 157 (1997)).  It is likewise settled that a sentencing judge may consider acts occurring outside of the limitations period as relevant conduct for sentencing purposes.  <u>United States v. Stephens</u>, 198 F.3d 389, 391 (3d Cir. 1999) (collecting decisions from the Second, Fifth, Sixth, Seventh, Tenth, Eleventh, and D.C. Circuits).  Accordingly, the mere fact that Ciavarella no longer stands convicted of racketeering or conspiracy would not *ipso facto* bar us from considering racketeering or conspiratorial conduct at a resentencing hearing.

Ciavarella's argument also fails for a more essential reason.  He ignores the critical point that the jury *did not acquit* on Counts 1, 2, and 21.  *Per contra*, the jury found beyond a reasonable doubt that Ciavarella committed two acts of racketeering (wire fraud and money-laundering conspiracy) and engaged in both a racketeering conspiracy and a money-laundering conspiracy.  (<u>See</u> Doc. 206 at 1, 2, 7).  The Third Circuit affirmed that verdict on direct appeal, concluding that there was sufficient evidence in the trial record to support the jury's finding that the 2003 payments were a bribe.  <u>See</u> <u>Ciavarella</u>, 716 F.3d at 730-32.  And the court of appeals expressly rejected Ciavarella's challenges to loss-amount, multiple-bribe, and two vulnerable-victim sentencing enhancements (the exact same challenges that he reprises here), holding that there was sufficient evidence of "multiple payments and an ongoing conflict of interest" to support the factual findings made by Judge Kosik.  <u>See</u> <u>id.</u> at 735-36; <u>see also</u> Brief for Appellant at 56-61, <u>Ciavarella</u>, 716 F.3d 705 (3d Cir. 2011).  Our subsequent legal determination that Counts 1, 2, and 21 *may* have been time barred has no impact on what the jury, the sentencing judge, and

the court of appeals have all said about the sufficiency of the evidence supporting Ciavarella's racketeering and conspiracy convictions and Guidelines calculation.

Ciavarella essentially seeks to parlay the *vacatur* of three of six grouped counts into a *de novo* resentencing, to reopen virtually all factual findings made by the jury and the sentencing judge and affirmed on appeal, and to roll the dice in hopes of a more lenient sentence from a different judicial officer.[7]  What Ciavarella asks of us is far beyond what the court of appeals has sanctioned in the context of Section 2255 relief for related but unchallenged counts.  We find that *de novo* sentencing is neither required nor warranted.

We offer a final observation in closing.  Ciavarella refuses to acknowledge the scope of his remaining crimes of conviction.  It is his view that, with the *vacatur* of the racketeering and conspiracy counts, he "now stands convicted only of covering up legal payments for purposes of income taxes and the Administrative Office of Pennsylvania Courts . . . disclosure forms." (Doc. 386 at 19).  Indeed, he believes

---

[7] Indeed, many of the arguments Ciavarella now advances are entirely unrelated to the elimination of his racketeering and conspiracy convictions.  For example, in arguing that $2,086,000 in finder's fees must be excluded from the loss amount, Ciavarella contends that the government should have been estopped from characterizing the fees as bribes when it posited that the same payments were noncriminal as to Mericle during Mericle's plea hearing.  (See Doc. 386 at 14-20).  Ciavarella raised essentially the same argument before the court of appeals, and it was rejected.  See Ciavarella, 716 F.3d at 725-26.  The Third Circuit's reasoning— that this prosecution was concerned with Ciavarella's mental state and not Mericle's—is in no way impacted by this court's subsequent *vacatur* of Counts 1, 2, and 21 on timeliness grounds.  Likewise, Ciavarella does not even attempt to connect his challenge to the vulnerable-victim enhancements to our Section 2255 ruling: he simply entreats the court to reevaluate the evidence based on his belief that "the sentencing court erred in making an affirmative finding that there were vulnerable victims and that such victims were numerous." (Doc. 386 at 27).

that he "does not stand convicted of . . . accepting any bribe or kickback." (Id.)
Ciavarella is wrong. He remains convicted of, among other crimes, three counts of
honest-services mail fraud. It is an essential element of that offense that Ciavarella
participated in a fraud scheme "conducted through the use or bribes or kickbacks"
in exchange for official action. Ciavarella, 716 F.3d at 731-32 (quoting United States
v. Wright, 665 F.3d 560, 568 (3d Cir. 2012)). And the sentencing transcript reflects
that this aspect of Ciavarella's conduct—the abuse of public trust by an elected
jurist and the resulting harm to vulnerable juvenile victims—was particularly
troubling to the sentencing court. (See, e.g., Doc. 271, Sent. Tr. 28:14-31:1-11).

For all of these reasons, we conclude that the sentence imposed "still fits
both crime and criminal." See Miller, 594 F.3d at 180 (quoting Davis, 112 F.3d at
122 (quoting Pimienta-Redondo, 874 F.2d at 14)). To be abundantly clear, if we
were authorized to reduce Ciavarella's sentence, we would decline to do so.

## III.   Conclusion

We find that resentencing *de novo* on the remaining counts of conviction is
neither permitted nor warranted in this case. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:      August 24, 2020